583 A.2d 445

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Robert A. EDWARDS, Appellee.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Robin G. PICKRON, Appellee.**

Superior Court of Pennsylvania.

Argued May 23, 1990.

Filed Dec. 6, 1990.

Kathy L. Echternach, Asst. Dist. Atty., Thorndale, for Com.

Daniel M. Preminger, Philadelphia, for appellee (at 2315).

Owen Larrabbe, Philadelphia, for appellee (at 2325).

Before WIEAND, McEWEN and HUDOCK, JJ.

WIEAND, Judge:

This is an appeal from an order of the trial court which suppressed controlled substances and other evidence seized from a parolee's apartment following a warrantless search by parole officers who were present to execute a warrant for the arrest of the parolee because of her failure to report to her parole supervisor.

On March 6, 1989, at or about 6:15 a.m., David Guglielmi and James Newton, Pennsylvania State Parole Officers, arrived at the apartment of Robin Pickron, a parolee, to execute a warrant for Pickron's arrest for failing to report to her parole officer. The parole officers were admitted by Pickron's mother, who told them her daughter was not at home. The parole officers observed that Pickron was living beyond her means and told her mother that they were required to search the apartment for Pickron. There ensued a general search of areas large enough to conceal a person. In plain view inside a closet in a small office, the agents observed a bottle of quinine. Knowing that quinine was a cutting agent for heroin, the parole agents then expanded their search, looking in all areas of the apartment

for controlled substances. Newton, conducting a search of the room used as an office, found a coffee grinder containing a white, powdery residue and removed from the desk a teacup containing a small package of white powder and from beneath the desk glassine packets, vials and plastic bags. Guglielmi searched the bedroom and found two packets containing a white substance, nine packets containing a green weed, a plastic bottle of Inosital and a face filter mask. From the kitchen refrigerator he removed a plastic bag containing a white powder and from the medicine cabinet a small packet also containing a white powder. They also seized identification cards of Robert Edwards, who was Pickron's husband and also a parolee. When Pickron returned at 7:15 a.m., she was placed under arrest. Robert Edwards was subsequently arrested also. Pickron and Edwards were charged with possession of cocaine and marijuana, possession of a controlled substance with intent to deliver and criminal conspiracy. They filed a joint motion to suppress the contraband and other evidence seized from the apartment. The suppression court, following an evidentiary hearing, held that the parole officers had exceeded the authority vested in them by law and had conducted an illegal, warrantless search. Therefore, the court granted the motion to suppress. The Commonwealth has appealed.[1]

The standard of appellate review has been defined by the Supreme Court in *Commonwealth v. Lagana*, 517 Pa. 371, 537 A.2d 1351 (1988), as follows:

> In reviewing the findings of a suppression court where the Commonwealth is appealing, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983)

---

1. The Commonwealth has certified that the order in question substantially handicaps the prosecution. Therefore, its appeal is properly before us. *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985); *Commonwealth v. Sheppard*, 341 Pa.Super. 403, 491 A.2d 879 (1985).

(plurality opinion). While we are bound by the lower court's findings of fact if supported by the record, we are not bound by the court's legal conclusions which are drawn from the facts of the case. *Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111 (1985).

*Id.* 517 Pa. at 375–376, 537 A.2d at 1353–1354.

■ "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484, 492 (1972). Because parolees are still subject to an extant term of imprisonment and are the focus of society's rehabilitative efforts, they are treated differently than the general population. *Id.* 408 U.S. at 478, 92 S.Ct. at 2598, 33 L.Ed.2d at 492. Because parolees are subjected to specified conditions for the duration of their term, these conditions restrict their activities substantially beyond the ordinary restrictions imposed by law on private citizens. *Id.* See: *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709, 718 (1987) (supervision is a "special need" of the state and permits a degree of impingement upon *privacy* that would not be constitutional if applied to the public at large). A parolee does not enjoy "the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special parole restrictions." *Morrissey v. Brewer*, *supra* 408 U.S. at 480, 92 S.Ct. at 2600, 33 L.Ed.2d at 494. See also: *United States v. Thomas*, 729 F.2d 120, 123 (2d Cir.1984), *cert. denied*, 469 U.S. 846, 105 S.Ct. 158, 83 L.Ed.2d 95 (1984); *Latta v. Fitzharris*, 521 F.2d 246, 249 (9th Cir.1975) (en banc), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975) (parolee's diminished Fourth Amendment protection regarding searches by a parole officer arises from the necessity for effective parole supervision and the unique relationship of the parole officer and the parolee); *Jarvis El v. Pandolfo*, 701 F.Supp. 98, 101 (E.D.Pa.1988).

■ A parole officer is permitted to search the belongings of a parolee to ensure that they do not conceal evidence of a violation of parole. Despite having reduced expectations of privacy because of their status, however, parolees are still entitled to protection against unreasonable searches and seizures by the Fourth Amendment. See: *Latta v. Fitzharris, supra* at 248; *Commonwealth v. Miller*, 303 Pa.Super. 504, 515–516, 450 A.2d 40, 46 (1982) (Dissenting Opinion by McEwen, J.). "Society's interest in protection and rehabilitation, which is sufficient to permit a diminishment of a parolee's [F]ourth [A]mendment protection, is not so broad in scope as to permit total disregard for the panoply of a parolee's [F]ourth [A]mendment rights." *Commonwealth v. Berry*, 265 Pa.Super. 319, 324, 401 A.2d 1230, 1232 (1979). "What is called for once a prisoner has been released on parole is a reweighing of the balance between individual and societal interests in light of the parolee's current status in the community." *People v. Burgener*, 41 Cal.3d 505, 531, 224 Cal.Rptr. 112, 129, 714 P.2d 1251, 1267 (1986). A search must be reasonable and must be based upon a parole officer's reasonable belief that it is necessary to the performance of his duties. See: *United States v. Duff*, 831 F.2d 176, 179 (9th Cir.1987); *Latta v. Fitzharris, supra* at 250–252. Balancing the interests of the parolee against the societal interest in public safety leads to the conclusion "that warrantless searches of parolees are not per se unreasonable if conducted for a purpose properly related to parole supervision." *People v. Burgener, supra* 41 Cal.3d at 532, 224 Cal.Rptr. at 130, 714 P.2d at 1268.

■ However, a parole search may not be used as a "subterfuge for a criminal investigation." *United States v. Richardson*, 849 F.2d 439, 441 (9th Cir.1988), *cert. denied*, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 141 (1988), quoting *Latta v. Fitzharris*, 521 F.2d 246, 249 (9th Cir.1975). A parole officer may not act as a "stalking horse" for the police. *United States v. Richardson, supra* at 441, quoting *United States v. Jarrad*, 754 F.2d 1451, 1454 (9th Cir.1985),

*cert. denied,* 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985). See also: *Latta v. Fitzharris, supra* at 247; *Smith v. Rhay,* 419 F.2d 160, 162–163 (9th Cir.1969); *United States v. Hallman,* 365 F.2d 289, 292 (3rd Cir.1966). "Whether or not a parole officer is acting as a stalking horse is a question of fact [to be] reviewed for clear error." *United States v. Richardson, supra* at 441. See: *United States v. Jarrad, supra* at 1454.

The leading case in Pennsylvania is *Commonwealth v. Brown,* 240 Pa.Super. 190, 361 A.2d 846 (1976). There, a manufacturing company had reported the theft of a television set, stereo receiver, speakers and tapes. Later, a counselor at a community treatment center told Brown's parole officer that the parolee had the stolen goods in his home. During his next visit to the parolee's home, the parole officer observed a television set and stereo system. After receiving a detailed description of the stolen property from the company, the parole officer informed the company that he believed Brown had committed the burglary. The parole officer, accompanied by two police officers and a representative of the manufacturing company, returned to Brown's home, where they were admitted by a woman. The stolen goods were immediately identified by the manufacturing company representative, and Brown was thereafter arrested and charged. A motion to suppress evidence was denied by the trial court. On appeal, the Superior Court reversed. It recognized that a parolee's Fourth Amendment rights were diminished, observing:

> The basis for holding that a parolee has diminished Fourth Amendment rights is the necessity for an agent to have free access to supervise the parolee. Cf. *Wyman v. James,* 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971); *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Society has an interest—both for its protection and to effectuate rehabilitation—to facilitate such supervision. We, therefore, agree that when performing his normal duties, a parole agent is not required to obtain a search warrant.

*Id.* 240 Pa.Super. at 197, 361 A.2d at 849–850 (footnote omitted). The Court concluded further, however, that the parole officer had gone beyond his role as a parole officer to collect evidence needed for a possible parole revocation and had acted as a police officer. When "he 'switched hats' and, in all relevant respects, became a police officer," the Court said, "the administrative justification that generally permitted him to avoid acquisition of a warrant was no longer applicable. Thus, the Constitution mandated that he obtain a search warrant for [Brown's] premises." *Id.* at 198, 361 A.2d at 850.

In *Commonwealth v. Berry, supra,* a warrantless search was made by two policemen and a parole officer who had not been assigned to supervise the parolee and who had not monitored his activities. The search was made of a garage which had been leased to the defendant, where the agent "combed" through the contents for more than two hours and found numerous stolen automotive parts. The search, it was held, had been conducted in blatant disregard of the defendant's privacy rights and was not justified by society's interest in protecting itself or in rehabilitating the parolee.

In *Commonwealth v. Devlin,* 294 Pa.Super. 470, 440 A.2d 562 (1982), a probationer's mother told her son's probation officer that she had found something in a notebook in her son's room which alarmed her. She did not state what it was. The probation officer searched the probationer's room and found the notebook. Due to time constraints, the probation officer took the book to her office. Photocopies of certain entries were made, after which the book was returned to probationer's mother. Dated entries in the notebook described how probationer had set two fires. The fire marshall confirmed the dates and locations of the fires. With this information, a search warrant was obtained and, pursuant thereto, the notebook was seized. The Court held that the seizure was proper. The probation officer was entitled to search the belongings of the probationer to ensure that they did not evidence a violation of the terms of probation. The Court held further that the probation offi-

cer had not "changed hats" when she removed the note-book. At that point the probation officer did not know what there was in the notebook which had alarmed the probationer's mother.

The facts in the instant case are analogous to those in *Commonwealth v. Devlin, supra.* Here, the parole officers went to the Pickron apartment to execute an arrest warrant which had been issued because of Pickron's failure to report to her parole officer. The officers entered the apartment to make certain that Pickron was not hiding in the apartment. While conducting this search, one of the officers found a bottle of quinine. Because quinine was known to be a cutting agent for heroin, the focus of the officer's search changed. Instead of searching for the person of the parolee, the officers now began looking for evidence of controlled substances. Their continued search of the apartment without obtaining a warrant was proper if it was a necessary part of effective parole supervision, i.e., a search for evidence that the parolee had violated the terms of her parole. It was only if the parole officers "changed hats" and became stalking horses for the police that society's interest in the rehabilitation of the parolee was superseded by the parolee's privacy interests. If and when that occurred, the subsequent search of the parolee's apartment without a search warrant was in violation of the parolee's Fourth Amendment rights.

The parole officers testified at the suppression hearing that the purpose of their continued search of the apartment was to unearth evidence of additional violations of parole. The suppression court rejected this testimony and found that "there was nothing routine or supervisory about the search of the apartment." This finding, as we have observed, is reviewable only for clear error.

The suppression court recited three reasons for finding that the parole officers were conducting a criminal investigation as stalking horses for the police. First, the court said, the parole officers went to the parolee's apartment to

make an arrest and not to look for evidence of a parole violation. Secondly, the court reasoned, the parole officers seized Roberts' identification cards although neither parole officer had been assigned to supervise him. Finally, the court said, no parole violation charges were filed against either parolee.

We are constrained to conclude that the suppression court's reasoning was flawed. The parole officers went to Pickron's apartment to arrest her for failing to report to her parole officer. They entered and searched the apartment in order to determine whether she was present in the apartment. They found quinine, a cutting agent for heroin, in a closet of the apartment occupied by the defaulting parolee. Therefore, they expanded their search to determine whether there was evidence that the parolee was abusing drugs. It was clearly within their role as supervisors of Pickron's parole to ascertain whether the parolee, who had not been reporting to her supervisor, had been engaged in illegal drug activities. The fact that the parole officers elected to make this additional determination did not cause them to switch roles from parole supervisors to police officers engaged in investigating crime.

The search of the apartment was made by parole officers without assistance or intervention by police. The record does not show police involvement of any kind in the events which caused the parole officers to arrive at, enter and search the parolee's apartment. The fact that the parole officers, having found controlled substances in the apartment, elected to proceed first by criminal prosecution rather than by immediate parole violation proceedings does not imply that they were acting in a police capacity when they searched the parolee's apartment. By proceeding criminally in the first instance, they may well have envisioned an evidentially easier and more narrowly focused parole violation hearing.

Finally, it cannot be said that the parole officers changed hats and became stalking horses for the police when, having found contraband, they retained evidence which identified

other occupants of the apartment who may have had access to the contraband. This fact, without more, did not render illegal the search for contraband after the finding of a bottle of quinine had suggested the likelihood that the parolee was keeping a controlled substance in the apartment.

After careful review, we conclude that the evidence fails to support the suppression court's finding that the search of the Pickron apartment was part of or a subterfuge for a criminal investigation. Rather, the evidence demonstrates unequivocally that the parole officers had not "changed hats" when they conducted a search of the apartment but were continuing in their role as supervisors of Pickron's parole. To bar such searches by parole officers except as authorized by warrant issued upon probable cause would unduly interfere with the parole system's function of protecting the public and rehabilitating the criminal. It would impair the ability of parole officers to respond quickly to evidence of misconduct and would reduce the deterrent effect of supervisory searches. See: *Griffin v. Wisconsin,* *supra* 483 U.S. at 876, 107 S.Ct. at 3169, 97 L.Ed.2d at 719.

Order reversed.