673 A.2d 927

COMMONWEALTH of Pennsylvania, Appellee,

v.

Patrick A. GAYLE, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 11, 1995.

Filed March 13, 1996.

248

Allen C. Welch, Lemoyne, for appellant.

E. Christopher Abruzzo, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

Before DEL SOLE, POPOVICH and OLSZEWSKI, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Dauphin County on June 1, 1995, following appellant's conviction on charges of possession with intent to distribute a controlled substance,[1] unlawful possession of a small amount of marijuana[2] and unlawful possession of drug paraphernalia.[3]  Appellant argues that the

1. Title 35 § 780–113(a)(30).
2. Title 35 § 780–113(a)(31).
3. Title 35 § 780–113(a)(32).

suppression court erred in failing to suppress evidence found in his possession after he was searched by parole officers and police officers. We agree and, consequently, vacate the judgment of sentence and remand for a new trial.

■ Our standard of review in this case is well-settled. Our supreme court has held that:

> In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177, 178–179 (1992), *alloc. denied,* 533 Pa. 598, 617 A.2d 1273 (1992) (citation omitted).

We note with disapproval that the record in this case was forwarded to us without an opinion by the lower court. Pennsylvania Rule of Appellate Procedure 1925(a) requires the lower court to file a brief statement of the reasons for the order or judgment which was appealed.[4] However, in this case, it is possible for us to make a decision on appeal absent a lower court opinion, and, thus, for the sake of judicial economy, we will do so. We further note that the Commonwealth has failed to file a brief in this case. However, the Commonwealth did file a letter with this court, whereby they expressly

**4.** Pa.R.A.P. 1925(a) states:

> Upon receipt of the notice of appeal the judge who entered the order appealed from, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief statement, in the form of an opinion, of the reasons for the order, of the reasons for the rulings or other matters complained of, or shall specify in writing the place in the record where such reasons may be found.

conceded all issues raised by appellant on appeal. Commonwealth letter 11/27/95 p. 1.

The relevant facts in this case are not in dispute and they are as follows: On March 26, 1994, police officers from the Dauphin County Drug Task Force were working a detail in Dauphin County, near the Edgemont Social Club. There had been a rash of criminal activity near the club, and, therefore, additional police officers were assigned to the area.

Prior to the mission on March 26, 1994, the officers, including parole officers, were briefed. The parole officers were briefed at the same time, in the same place and in the same manner as the police officers. Once deployed into the field, the parole officers monitored the police radio broadcasts and made responses thereto.

On March 26, 1994, at approximately 2:05 a.m., police officers assigned to the Edgemont Social Club area observed a vehicle with only one working headlight. Observing this violation of the general lighting requirements and observing that the vehicle was "heading towards the area of the Edgemont Social Club," the officers followed the vehicle and, subsequently, activated their emergency lights. The driver of the vehicle, appellant, who was a parolee, pulled the vehicle to the side of the road.

After pulling over, appellant exited the vehicle. The police officers advised him to get back into the vehicle. The police officers approached appellant's vehicle and requested his license and registration. While appellant was searching for his license and registration, the police officers noticed that a telephone pager was clipped to the driver's side sun visor.

Appellant located his license and registration and gave them to the police officers. The police officers then informed appellant that his vehicle had been pulled over because of a faulty headlight. The police officers returned to their vehicle and contacted the county dispatcher by radio to ascertain appellant's driving record and criminal history. This call from the police officers to the dispatcher was overheard by parole officers who were also patrolling the area. Parole Officer

Daniel McIntyre radioed the police officers to inform them that appellant was on parole and that they should hold him at the scene. In approximately thirty seconds, three parole officers were on the scene.

The parole officers searched appellant's person while in the presence of the police officers. The parole officers found five baggies of marijuana. Based on this evidence, appellant was arrested and advised of his *Miranda*[5] warnings by the police officers. He was then searched by the police officers incident to his arrest. The search disclosed seven baggies of cocaine in his sock, a baggie of cocaine tied around his waist, $206.00 in cash and additional, empty baggies. The confiscated marijuana totalled 4.6 grams and the cocaine totalled 6.7 grams. Appellant was charged with possession with intent to deliver, unlawful possession of a small amount of marijuana and unlawful possession of drug paraphernalia.

Appellant filed a pre-trial Motion to Suppress the narcotics and paraphernalia seized by the parole officers and the police officers. Following an evidentiary hearing, the motion was denied. Subsequently, appellant was tried on April 10, 1995, and was convicted of all charges. This appeal followed.

Appellant argues that after he provided the police officers with his registration and identification, the police officers continued to detain him unlawfully, and that the parole officers, who initially searched appellant's person, did not have the requisite reasonable and articulable suspicion under the *Terry* doctrine. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Appellant further argues that neither the parole officers nor the police officers had probable cause to make a warrantless arrest and a subsequent search of appellant's person incident to that arrest. *Commonwealth v. Agnew,* 411 Pa.Super. 63, 600 A.2d 1265 (1991).

Before deciding whether the officers had a reasonable and articulable suspicion to "stop and frisk" appellant or probable cause to make a warrantless arrest and search

---

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

incident to that arrest, we must first decide whether appellant's status as a parolee meant that he had a diminished expectation of privacy.

The issue of parolees' rights with regard to the Fourth Amendment to the United States Constitution [6] and Article I, Section 8 of the Pennsylvania Constitution,[7] has been the subject of rather recent appellate scrutiny.

In the early analysis of parolees' rights, courts distinguished those cases where parole officers "switched hats" and became "stalking horses" for the police from those cases where parole officers searched for evidence of parole violations. *See Commonwealth v. Edwards*, 400 Pa.Super. 197, 583 A.2d 445 (1990) (holding that parolees must endure warrantless searches based upon reasonable suspicion that they have committed parole violations). When parole officers "switched hats" and, in all relevant respects, became police officers, courts held that parole officers' searches and subsequent seizures of evidence was impermissible without warrants. *See Edwards, supra; Commonwealth v. Berry*, 265 Pa.Super. 319, 401 A.2d 1230 (1979) (holding that the parole officer had gone beyond his role as a parole officer when he worked closely with the police).

When parole officers did not "switch hats," but conducted searches and seizures based on parole violations, the searches and subsequent seizures of evidence were permissible without warrants. *Edwards, supra; Berry, supra.* Courts held that parolees' reasonable expectations of privacy were diminished as a consequence of their status, and, therefore, they must endure warrantless searches based upon reasonable suspicion

**6.** The Fourth Amendment to the United States Constitution provides, in relevant part, that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause. . . . "

**7.** Article I, Section 8 of the Pennsylvania Constitution provides, in relevant part, that: "The people shall be secure in their persons, houses, papers and professions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without probable cause. . . . "

that they had committed parole violations. *Edwards, supra; Berry, supra.* This distinction has been eroded.

In *Commonwealth v. Pickron,* 535 Pa. 241, 634 A.2d 1093 (1993), our supreme court reiterated the rule that parole agents cannot act like "stalking horses" for the police. However, the court's rather explicit holding, that warrantless searches of parolees' residences, even when supported by reasonable suspicion, are prohibited by the Fourth Amendment without the consent of the owners or passage of a statutory framework, indicates that even if parole agents are not acting like "stalking horses," parolees have Fourth Amendment rights. Cases following *Pickron* have not applied the "stalking horses/switching hats" analysis to determine whether the parole officers' conduct was proper. *Commonwealth v. Rosenfelt,* 443 Pa.Super. 616, 662 A.2d 1131, 1134 (1995) (holding that *Pickron* applies even if parole agents do not act as "stalking horses" for the police); *Commonwealth v. Alexander,* 436 Pa.Super. 335, 647 A.2d 935, 938 (1994) (determining whether parole officers were acting on behalf of the police is irrelevant subsequent to the holding in *Pickron* ).

The modern rule, which we must follow and apply in this case, has recently been enunciated in *Rosenfelt.* In *Rosenfelt,* we held that *"Pickron* stands for the proposition that without a prior agreement, or specific guidance from statute or regulation, a parolee's protection from an unreasonable search and seizure is no less than that afforded any other Commonwealth resident." *Rosenfelt,* 662 A.2d at 1134. We further explicitly held: "Absent a clear policy or an agreement between a parolee and the parole board, a parolee does *not* have a diminished expectation of privacy." *Id.* at 1146 (holding that parole officers could not search parolee's automobile trunk without probable cause, reasonable suspicion was not sufficient) (emphasis added).[8]

8. In *Rosenfelt,* we noted with disapproval that in recent years there has been a diminishment of the right of privacy under the Federal Constitution. *Rosenfelt,* 662 A.2d at 1146. In fact, we indicated that "[w]e are alarmed by recent news that the 104th United States Congress voted down 'a measure that repeated, verbatim, the language of the Fourth Amendment.'" *Id.* (quoting Katherine Q. Seelye, *At the Bar: A Con-*

While we acknowledge that the search at issue in *Pickron* was that of the parolee's home, and that the search at issue in *Rosenfelt* was that of the parolee's automobile trunk, it is reasonable to conclude that our holding in *Rosenfelt*, that a parolee does not have a diminished expectation of privacy, is to be extended to a search of the parolee's person. Keeping this rule of law in mind, we now turn to the issue of whether appellant was "seized" and whether his seizure was constitutional.

It is our determination that appellant was "seized" for the purposes of the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. Here, appellant was stopped by the police for a faulty headlight. Then, parole officers instructed the police to "hold" appellant at the scene until they could respond to search him, and the police did so. Clearly, appellant was "seized." *See Commonwealth v. Lewis,* 535 Pa. 501, 636 A.2d 619 (1994) (holding that when officers, by means of physical force or a show of authority have restrained the liberty of an individual, a "seizure" has occurred). Having found that appellant was "seized," we must next determine whether the seizure was justified.

In accordance with the protections afforded our citizens under Article I, Section 8 of the Pennsylvania Constitution, we have recognized only two instances where police may "seize" an individual, both require an appropriate showing of antecedent justification: first, a "stop and frisk" based upon reasonable suspicion, and, second, an arrest based upon probable cause. *Commonwealth v. Rodriquez,* 532 Pa. 62, 614 A.2d 1378, 1382 (1992) (citations omitted).[9]

*gress with Few Lawyers is a Congress with Different Inclinations,* N.Y. Times, April 7, 1995, at A33).

9. The protections of individual privacy against unreasonable governmental searches and seizures under the Pennsylvania Constitution are more expansive than those afforded under the United States Constitution. *Commonwealth v. Parker,* 422 Pa.Super. 393, 619 A.2d 735, 738 (1993). The United States Supreme Court's interpretations of Fourth Amendment guarantees do not bind this court in reaching conclusions regarding the protections afforded under Article 1, Section 8 of the

■ For the officers to have made a valid "stop and frisk," there must have been specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted that intrusion. *Lewis*, 636 A.2d at 623. A stop for investigatory purposes is justified only if the "officers observe unusual conduct which leads ... [them] reasonably to conclude in light of ... [their] experience that criminal activity may be afoot...." *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884. "This standard is met 'if the ... officers' reasonable and articulable belief that criminal activity was afoot [is] linked with ... their observations of suspicious or irregular behavior on behalf of the particular defendant stopped." *Lopez*, 609 A.2d at 180 (citing *Commonwealth v. Espada*, 364 Pa.Super. 604, 528 A.2d 968, 970 (1987)). In evaluating the reasonableness of a stop, we must look to the totality of the circumstances. *Commonwealth v. Daniels*, 410 Pa.Super. 275, 599 A.2d 988 (1991), *appeal denied*, 531 Pa. 645, 612 A.2d 983 (1992).

■ The reasonable suspicion necessary to justify a *Terry* stop is less stringent than probable cause, but the detaining officers must have more than a hunch as the basis for a stop. *In Interest of S.D.*, 429 Pa.Super. 576, 633 A.2d 172, 174 (1993). "Reasonable suspicion, like probable cause, is dependent upon both the content of the information possessed by [the officers] and its degree of reliability." *Interest of S.D.*, 633 A.2d at 174 (citation omitted).

■ Here, appellant's vehicle was stopped because it had a faulty headlight. Appellant does not contest the validity of this stop. Rather, he contends that after he provided the police officers with his license and registration, the police officers continued to detain him unlawfully at the scene, upon

Pennsylvania Constitution. *Id.* However, we conclude that under both the state and federal constitutional provisions, the search and seizure in this case was unconstitutional.

We note that the tests for determining probable cause and whether there is justification for a "stop and frisk" are essentially the same under the federal and state constitutions. *See Commonwealth v. Leninsky*, 360 Pa.Super. 49, 519 A.2d 984 (1986). Therefore, our analysis applies to both constitutional provisions.

the request of the parole officers, because he had a pager clipped on the driver's side sun visor and he was heading towards the area of the Edgemont Social Club. Parole officers then arrived on the scene and searched appellant's person and seized five baggies of marijuana.

We find that while the police officers' initial stopping of appellant for a motor vehicle violation was proper, the continued detention of appellant elevated to an investigatory stop for which the officers needed an articulable and reasonable basis.

Viewing the evidence in its totality, we cannot find that the parole officers or the police officers had a reasonable suspicion to make a *Terry* stop. The mere fact that appellant possessed a pager and was traveling in a certain area is not sufficient basis to make a *Terry* stop. It is well-established that appellant's mere presence near a high crime area or a vicinity of recently reported crime is not enough to warrant a *Terry* stop. *Commonwealth v. Kearney*, 411 Pa.Super. 274, 601 A.2d 346 (1992). In addition, we note that there was no link between appellant and the area from where narcotics were allegedly being distributed.

As discussed previously, the fact that appellant was a parolee does not diminish his reasonable expectation of privacy, absent a clear policy or an agreement between appellant and the parole board. Since there was no reasonable basis to suspect that appellant was connected in any manner with the supposed criminal activity in the Edgemont Social Club area, the search of appellant's person by the parole officers was a product of an illegal detention. Therefore, the marijuana seized from appellant's person by the parole officers should have been suppressed under both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. In addition, the evidence seized during the police officers' search of appellant's person incident to his arrest should have been suppressed because it was "fruit of the poisonous tree." *See Commonwealth v. Berry,*

265 Pa.Super. 319, 401 A.2d 1230, 1231 (1979).[10]

Judgment of sentence is vacated and this case is reversed and remanded. Jurisdiction is relinquished.

**10.** Having found that the officers did not have reasonable suspicion to conduct a *Terry* "stop and frisk," we need not address appellant's argument that neither the parole officers nor the police officers had probable cause to make a warrantless arrest and a subsequent search of appellant's person incident to that arrest.