COMMONWEALTH of Pennsylvania,
Appellee,

v.

Thomas J. ALTADONNA,
Jr., Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 12, 2002.

Filed Feb. 13, 2003.

Philip B. Friedman, Erie, for appellant.

Bradley H. Foulk, Asst. Dist. Atty., Erie, for Com., appellee.

BEFORE: LALLY-GREEN, TODD and POPOVICH, JJ.

POPOVICH, J.:

¶ 1 Appellant Thomas J. Altadonna, Jr., appeals from the judgment of sentence entered June 4, 2002, in the Erie County Court of Common Pleas. Upon review, we affirm.

¶ 2 On May 16, 2001, Appellant was on state parole. The Pennsylvania Board of Probation and Parole received information that Appellant was dealing drugs. Parole officers had another parolee arrange to meet with Appellant, and Appellant was seized while sitting in a van at the agreed upon time and place of the meeting. The

parole officers searched the van, and they found cocaine and other drug items in the van.

¶ 3 Appellant was arrested as a result of the May 16, 2001, incident and charged with one count of possession of a controlled substance and one count of possession with intent to deliver a controlled substance. Appellant filed a Motion to Suppress requesting suppression of all evidence seized from the van based upon an alleged illegal search and seizure. After a hearing, the suppression court denied the Motion and issued an opinion.

¶ 4 A bench trial was held, and Appellant was found guilty of the charges. On June 4, 2002, Appellant was sentenced to serve a term of five to ten years imprisonment and ordered to pay a fine of $30,000.00 and court costs. Appellant filed a timely appeal. The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal. The trial court did not file a second opinion.

¶ 5 Appellant raises the following issue on appeal:

Whether the search and seizure of [Appellant]'s van by parole and probation officers and [Office of Attorney General, Bureau of Narcotics Investigation] agents was conducted in violation of [Appellant]'s Fourth and Fourteenth Amendment and Article I, Section 8 rights.

*See* Appellant's brief, at 4.

¶ 6 Our standard of review is as follows: When reviewing a trial court's decision to suppress evidence, we are bound by the facts found by the suppression court, and we may reverse that court only if the legal conclusions drawn from the facts are erroneous. *Commonwealth v. Lagana*, 517 Pa. 371, 375, 537 A.2d 1351, 1353–54 (1988).

*Commonwealth v. Williams*, 547 Pa. 577, 584, 692 A.2d 1031, 1034 (1997).

¶ 7 The Commonwealth was the only party to present evidence at the suppression hearing. After hearing the testimony, the suppression court made the following findings of fact:

On May 16, 2001, a parole officer received information concerning [Appellant], about a possible drug transaction involving another parolee. The information also included that [Appellant] might be carrying a handgun. The information came from another parolee, Sean Bryson (hereinafter informant). The information was conveyed to Supervisor Steve Dreistadt. Agent Dreistadt instructed Agent John Amato to contact the Bureau of Narcotics Investigation of the Attorney General's Office (hereinafter BNI) for back up and security on the investigation. The Attorney General's office was chosen due to possible jurisdictional uncertainty that may occur in the investigation. Sometime between 10:30 and 11:00 AM Agent Tim Albeck of BNI arrived at the Probation and Parole Office (hereinafter PPO). At this time Agent Albeck was informed of the PPO's plan. Agent Albeck agreed with the plan and made some of his own suggestions such as using [BNI] vehicles for fear of [Appellant] recognizing the PPO vehicles. The plan included taking the informant to the pay phone to set up a drug buy. This was done by Agents Amato and Mott and BNI Agent Albeck. The informant set up a buy with [Appellant] for 2:30 PM at the Country Fair [convenience store] located at West 38th Street and Caughey Road. The informant was not given any money to purchase drugs, nor was he told to buy any drugs or the quantity of drugs he would have to buy. The informant was not permitted to make actual contact with

[Appellant] during the alleged "buy" that was set up with the help of the informant.

Agent Albeck suggested using the BNI vehicles so that the Defendant would not recognize the PPO vehicles. Two BNI vehicles and Agent Dreistadt's personal vehicle were used in the investigation. BNI Agents Connelly and Visnesky were contacted to assist as back up for the PPO Agents. Upon arrival at the Country Fair, the agents observed [Appellant] pull his van into a parking space in the Country Fair lot. The informant began to approach [Appellant]'s vehicle and then ran when the agents appeared. The informant was chased, apprehended, cuffed and placed in a vehicle while Agent Albeck's vehicle blocked [Appellant]'s van. [Appellant] was removed from his vehicle, placed facedown on the ground and cuffed by PPO Agent Amato. PPO Agents Campbell and Mott searched the van. [Cocaine was found in the van near the driver's seat.] Upon returning to the parole office, BNI Agent Connelly field-tested the cocaine and Agent Albeck took possession of the cocaine to transport to the BNI Office.

Suppression Court Opinion, 5/6/02, at 1–2 (citations to record omitted).

¶ 8 Appellant argues on appeal that the BNI agents used the special status of the parole officers to search Appellant ·and circumvent the warrant requirement. Ap-

pellant alleges that the parole officers acted as "stalking horses" for the BNI agents and that the suppression court failed to draw the appropriate legal conclusions from the testimony presented and suppress the evidence.[1]

¶ 9 We begin with a review of the applicable law. · In *Commonwealth v. Gayle*, 449 Pa.Super. 247, 673 A.2d 927, 930–31 (1996), we recognized:

In the early analysis of parolees' rights, courts distinguished those cases where parole officers "switched hats" and became "stalking horses" for the police from those cases where parole officers searched for evidence of parole violations. *See Commonwealth v. Edwards*, 400 Pa.Super. 197, 583 A.2d 445 (1990) (holding that parolees must endure warrantless searches based upon reasonable suspicion that they have committed parole violations). When parole officers "switched hats" and, in all relevant respects, became police officers, courts held that parole officers' searches and subsequent seizures of evidence was impermissible without warrants. *See Edwards, supra; Commonwealth v. Berry*, 265 Pa.Super. 319, 401 A.2d 1230 (1979) (holding that the parole officer had gone beyond his role as a parole officer when he worked closely with the police).

When parole officers did not "switch hats," but conducted searches and seizures based on parole violations, the searches and subsequent seizures of evi-

---

1. Appellant has raised claims under both the United States Constitution and the Pennsylvania Constitution. In *Commonwealth v. Gayle*, 449 Pa.Super. 247, 673 A.2d 927, 931 n. 9 (1996), a panel of this Court noted:

The protections of individual privacy against unreasonable governmental searches and seizures under the Pennsylvania Constitution are more expansive than those afforded under the United States Constitution. *Commonwealth v. Parker,* 422

Pa.Super. 393, 619 A.2d 735, 738 (1993). The United States Supreme Court's interpretations of Fourth Amendment guarantees do not bind this court in reaching conclusions regarding the protections afforded under Article 1, Section 8 of the Pennsylvania Constitution. *Id.*

Appellant has relied solely upon Pennsylvania caselaw in his brief. Therefore, we have not addressed Appellant's federal and state constitutional claims separately.

dence were permissible without warrants. *Edwards, supra; Berry, supra.* Courts held that parolees' reasonable expectations of privacy were diminished as a consequence of their status, and, therefore, they must endure warrantless searches based upon reasonable suspicion that they had committed parole violations. *Edwards, supra; Berry, supra.* This distinction has been eroded.

In *Commonwealth v. Pickron,* 535 Pa. 241, 634 A.2d 1093 (1993), our supreme court reiterated the rule that parole agents cannot act like "stalking horses" for the police. However, the court's rather explicit holding, that warrantless searches of parolees' residences, even when supported by reasonable suspicion, are prohibited by the Fourth Amendment without the consent of the owners or passage of a statutory framework, indicates that even if parole agents are not acting like "stalking horses," parolees have Fourth Amendment rights. Cases following *Pickron* have not applied the "stalking horses/switching hats" analysis to determine whether the parole officers' conduct was proper. *Commonwealth v. Rosenfelt,* 443 Pa.Super. 616, 662 A.2d 1131, 1134 (1995) (holding that *Pickron* applies even if parole agents do not act as "stalking horses" for the police); *Commonwealth v. Alexander,* 436 Pa.Super. 335, 647 A.2d 935, 938 (1994) (determining whether parole officers were acting on behalf of the police is irrelevant subsequent to the holding in *Pickron* ).

The modern rule, which we must follow and apply in this case, has recently been enunciated in *Rosenfelt.* In *Rosenfelt,* we held that "*Pickron* stands for the proposition that without a prior agreement, or specific guidance from statute or regulation, a parolee's protection from an unreasonable search and seizure is no less than that afforded any other Commonwealth resident." *Rosenfelt,* 662 A.2d at 1134. We further explicitly held: "Absent a clear policy or an agreement between a parolee and the parole board, a parolee does not have a diminished expectation of privacy." *Id.* at 1146 (holding that parole officers could not search parolee's automobile trunk without probable cause, reasonable suspicion was not sufficient) (emphasis added). [Footnote omitted].

While we acknowledge that the search at issue in *Pickron* was that of the parolee's home, and that the search at issue in *Rosenfelt* was that of the parolee's automobile trunk, it is reasonable to conclude that our holding in *Rosenfelt,* that a parolee does not have a diminished expectation of privacy, is to be extended to a search of the parolee's person.

¶ 10 On January 16, 1996, statutory law went into effect that permits the search of a parolee and his property if a parole officer has reasonable suspicion that the search may yield a violation of the conditions of supervision.[2] Specifically, 61 P.S. § 331.27a provides, in pertinent part:

**Searches by state parole agents**

\* \* \*

(b) State parole agents are authorized to search the person and property of State offenders in accordance with the

---

**2.** We note that a similar statute was discussed in *Pickron,* 634 A.2d at 1096–97 (citing *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)). Our Supreme Court noted that in *Griffin,* the United States Supreme Court upheld a search of a probationer's house based upon reasonable suspicion because it was "carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirements under well-established principles." *Pickron,* 634 A.2d at 1097 (quoting *Griffin,* 483 U.S. at 873, 107 S.Ct. 3164).

provisions of this section. Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania.

(c) No violation of this section shall constitute an independent ground for suppression of evidence in any probation/parole or criminal proceeding.

(d)(1) A personal search of an offender may be conducted by any agent:

(i) if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision[.]

* * *

*(2) A property search may be conducted by any agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.*

(3) Prior approval of a supervisor shall be obtained for a property search absent exigent circumstances. No prior approval shall be required for a personal search.

* * *

*(5) The offender may be detained if he is present during a property search.* [ . . . ]

(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following facts, where applicable, may be taken into account:

(i) The observation of the agents.

(ii) Information provided by others.

(iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of agents with the offender.

(vi) The experience of agents in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

* * *

(f) The authority granted to agents under this section shall be effective upon enactment, without the necessity of any further regulation by the board.

(Emphasis added).

¶ 11 The statute defines "[p]roperty search" as "[a] warrantless search of real property, vehicle or personal property which is in the possession or under the control of the offender." 61 P.S. § 331.27a(g).

¶ 12 We turn now to the suppression court decision. The suppression court engaged initially in an analysis of whether the parole officers acted as "stalking horses" for the BNI agents and concluded that the parole officers were not acting as BNI agents at the time they searched Appellant's van. The suppression court found that the purpose of the search was to determine if Appellant had committed a technical violation of his parole and that the search was not a criminal investigation. The suppression court found that the parole officers had reasonable suspicion based upon the informant's information and that the parole officers were acting within their duties and consistently with office policy at the time of the search. *See* Suppression Court Opinion, at 3–5.

¶ 13 Thereafter, the suppression court recognized that our Supreme Court has stated that the Fourth Amendment of the United States Constitution prohibits a

warrantless search based upon reasonable suspicion unless the parolee has given consent or a statutory or regulatory framework exists. *See Commonwealth v. Williams,* 547 Pa. 577, 692 A.2d 1031 (1997). The suppression court recognized that 61 P.S. §§ 331.27a–331.27b authorize a parole officer to search a parolee's person and property if the parole officer has reasonable suspicion that the person or property contains evidence of violations of the conditions of parole. *See* Suppression Court Opinion, at 6. The suppression court found that Appellant's due process rights were not violated because the parole officers were acting on their own accord and within their duty as parole officers and not acting as BNI agents. *See id.* at 6.

■ ¶ 14 Although the suppression court properly concluded that a statutory framework exists to guide the reasonable suspicion inquiry, the suppression court failed to apply the factors set forth in the statute. Therefore, we now determine whether the parole officers had reasonable suspicion after applying the factors set forth in the statute. *See* 61 P.S. § 331.27a(6)(i)-(viii).

¶ 15 The first factor is the observation of the parole officers. *See* 61 P.S. § 331.27a(6)(i). The parole officers in this case observed the informant, who provided them information about Appellant, and Appellant met at the agreed upon time and place as arranged by the informant.

¶ 16 The second factor is information provided by others. *See* 61 P.S. § 331.27a(6)(ii). The informant provided information to Parole Officer Mott that Appellant was dealing drugs and may be carrying a handgun. The informant also related the contents of his telephone conversations with Appellant to one or more of the parole officers. No evidence was offered concerning the informant's history or the reasons the parole officers believed his information.

¶ 17 The third factor is the activities of the offender. *See* 61 P.S. § 331.27a(6)(iii). Appellant's activities consisted of his receipt of a telephone call from the informant, his placement of a telephone call to the informant, his presence at the agreed upon location at the agreed upon time and his possible attempt to flee after the parole officers announced their presence at the Country Fair. *See* N.T. Suppression Hearing, 2/28/02, at 49.[3]

¶ 18 The fourth factor is the information provided by the offender. *See* 61 P.S. § 331.27a(6)(iv). The verbal information provided by Appellant was contained in the telephone conversations he had with the informant but this information was not made part of the record. The only information of record was a general understanding by the parole officers that the informant told Appellant that he wanted to meet with Appellant to buy drugs and that the informant arranged such a meeting with Appellant.

¶ 19 The fifth factor is the experience of the parole officers with the offender. *See* 61 P.S. § 331.27a(6)(v). The sixth factor is the experience of the agents in similar circumstances. *See* 61 P.S. § 331.27a(6)(vi). The seventh factor is the prior criminal and supervisory history of the offender. *See* 61 P.S. § 331.27a(6)(vii). No evidence was offered concerning these factors.

¶ 20 The last factor is the need to verify compliance with the conditions of supervision. *See* 61 P.S. § 331.27a(6)(viii). The probation officers testified that they had the informant set up a meeting with Appel-

**3.** Parole Officer Mott testified, "[Appellant] put his—he put his car, the van, in gear as to pull out. I don't know if he was trying to run over us, take off." *Id.* at 49.

lant so that Appellant could be located and searched in order to determine if he was complying with the terms of his parole.

¶ 21 Although evidence was not presented concerning all of the eight factors, based upon the evidence that was presented, we find that the suppression court did not err in concluding that reasonable suspicion existed to stop Appellant and search the van.

■ ¶ 22 Although the issue of the reliability of the informant was not explicitly addressed by any of the witnesses, we find that the parole officers reasonably relied upon the information he provided. If the informant, who was a parolee himself, had given false information to the parole officers, the informant would have placed himself at risk for prosecution or parole revocation. *See Commonwealth v. Hayward,* 756 A.2d 23, 34 (Pa.Super.2000) ("[I]f an informant is known to the police, or identifies him or herself to the police, then there is an indicia of reliability attached to the tip, because the informant has placed himself or herself at risk for prosecution for giving false information to the police if the tip is untrue."). Moreover, The informant cooperated with the parole officers and appeared at the Country Fair in his own vehicle at the arranged meeting time. The informant's actions were consistent and strengthened the reliability of the information he provided.

■ ¶ 23 It was not necessary for the parole officers to observe personally Appellant engage in illegal activity or suspicious conduct in order for them to form reasonable suspicion. Officers may rely upon information from third parties in order to form reasonable suspicion. *See Commonwealth v. Wright,* 448 Pa.Super. 621, 672 A.2d 826, 830 (1996).

■ ¶ 24 The fact that Appellant's presence at the Country Fair may have been consistent with innocent behavior does not, standing alone, make the detention and limited investigation illegal. *See Commonwealth v. Johnson,* 734 A.2d 864, 869 (Pa.Super.1999). All of the facts set forth above, including Appellant's possible attempt to flee the Country Fair parking lot upon learning of the presence of the parole officers, gave the parole officers reasonable suspicion that Appellant was violating the conditions of his supervision and, therefore, justification to stop Appellant and search the van. *Cf. In the Interest of D.M.,* 566 Pa. 445, 450, 781 A.2d 1161, 1164 (2001) (holding defendant's unprovoked flight was factor in determining that officer had reasonable suspicion).

¶ 25 Appellant's argument that the suppression court erred in finding that the parole officers were not acting as agents for the BNI and circumventing the warrant requirement when they seized Appellant and searched the van fails.

■ ¶ 26 As set forth above, determining whether parole officers were acting as parole officers or as agents of the police at the time of a search became unnecessary when parole officers were held to the same standards as the police. *See Gayle,* 673 A.2d at 930–931. After our Supreme Court's decision in *Pickron* in 1993, it was clear that parole officers, like the police, needed a search warrant supported by probable cause to search a parolee's person or property, unless exigent circumstances existed.

■ ¶ 27 With the passage of 61 P.S. § 331.27a, effective January 16, 1996, parole officers were permitted to search a parolee's person and property if there is reasonable suspicion to believe that the person or property has evidence of parole violations. Therefore, unlike police officers, including BNI agents, parole officers do not need a warrant supported by proba-

ble cause to search a parolee's person or property when they have reasonable suspicion of a parole violation. Accordingly, determining whether parole officers are acting as "stalking horses" of the police when they conduct searches of parolees, thereby circumventing the warrant requirement, is pertinent again.

■ ¶ 28 Based upon our review of the record, we find that the trial court did not err in concluding that the parole officers were not acting as agents of the BNI at the time Appellant was seized and the van was searched. Although Appellant cites correctly the ways in which the BNI agents assisted the parole officers in effectuating the seizure of Appellant and the search of the van, the witnesses testified consistently that the stop and search took place in order to determine whether Appellant had committed a technical violation of his parole.

■ ¶ 29 Appellant contests the suppression court's reliance upon the testimony of Parole Officer Supervisor Dreistadt in drawing its conclusions. Initially, we note that we are bound by the trial court's credibility determinations. *See Commonwealth v. Wimbush*, 561 Pa. 368, 381, 750 A.2d 807, 814 (2000). Appellant asserts first that Supervisor Dreistadt's testimony that the parole officers called upon BNI agents for backup "out of the blue," instead of another law enforcement body, was not credible. The trial court found that BNI was contacted "due to possible jurisdictional uncertainty that may occur in the investigation." *See* Suppression Court Opinion, at 1. Therefore, even though Appellant's assertion is correct, it does not alter the outcome of this case as the trial court made this finding.

■ ¶ 30 Appellant asserts second that Supervisor Dreistadt's testimony that the informant was not used to make a controlled buy was also not credible because it conflicted with an internal memorandum he authored and the testimony of another parole officer. The internal memorandum indicated and the parole officer testified that the informant was used to make a controlled buy. Supervisor Dreistadt agreed on cross-examination that when probation officers use a parolee to make a controlled buy, certain procedures have to be followed. Supervisor Dreistadt testified that the informant was not used to make a controlled buy, and, therefore, the procedures did not need to be followed. *See* N.T. Suppression Hearing, 2/28/02, at 30–31.

¶ 31 The trial court found that the informant was not used to make a controlled buy. The trial court relied upon the fact that the informant was not given money to purchase drugs, he was not told to buy drugs nor was he permitted to make physical contact with Appellant at the Country Fair. These facts, in addition to Supervisor Dreistadt's testimony, support the trial court's conclusion. Therefore, Appellant's argument has no merit.

¶ 32 As we find no error with the suppression court's legal conclusions, we affirm the judgment of sentence.

¶ 33 Judgment of sentence affirmed.