**Stephen LEE, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 5, 2005.

Decided Oct. 25, 2005.

Stephen Lee, petitioner, pro se.

Arthur R. Thomas, Asst. Counsel and Victoria S. Freimuth, Chief Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Stephen Lee petitions for review of the February 24, 2005 decision of the Pennsylvania Board of Probation and Parole (Board) that denied his request for administrative review of a January 6, 2005 Board order recommitting Lee to serve 8 months backtime as a technical parole violator (TPV) for his failure to abide by special condition 7 of his parole: failure to successfully complete the Diagnostic Rehabilitation Center Program (DRC). We affirm.

On September 22, 1993, Lee was released on parole from a 5 to 20 year sentence for burglary. As a condition of his parole, Lee was required to enroll in an intensive supervision release program and meet the requirements related thereto. (O.R.6)

Thereafter, Lee was arrested by the Cheltenham Police Department on July 25, 1994. The Board detained Lee pending disposition of the criminal charges. (O.R.9) By decision dated April 6, 1995, the Board continued to detain Lee pending disposition of the Cheltenham charges and further detained him due to an arrest by the Jenkintown Police Department on August 19, 1994. (O.R.10)

On May 9, 1995, Lee pleaded guilty to two counts of burglary and received a sentence of 4 to 15 years. (O.R.1) Lee's minimum term expiry was calculated to be October 24, 1999, and his maximum term expiry was determined to be October 24, 2010. (*Id.*)

By decision mailed October 18, 1995, the Board recommitted Lee to serve 15 months backtime as a convicted parole violator (CPV). (O.R.11) Additionally, by Board decision dated September 11, 1996, the Board recommitted Lee as a CPV to serve 6 months backtime concurrently with the previously imposed 15 months backtime. (O.R.12)

On January 7, 2004, the Board rendered a decision granting Lee parole. As a condition of parole, Lee was required, *inter alia*, to participate in a residential treatment program until he was successfully discharged by the parole supervision staff. (O.R.23) Lee was further required to abide by the rules and regulations of the residential treatment program and any violation of the rules or regulations would subject Lee to sanctions and/or arrest. (O.R.23–25) Lee acknowledged the conditions of his parole. (O.R. 28–29; 36) Lee was released to DRC in Philadelphia on March 29, 2004.

On October 5, 2004, the Board lodged a warrant to commit and detain Lee based

on a violation of special condition 7 of his parole, in that Lee was discharged from DRC on October 5, 2004. (O.R.30–31)

At a preliminary detention hearing held October 19, 2004, Parole Agent L. Zayon testified that on September 30, 2004, Lee did not check in with DRC staff. On October 5, 2004, DRC staff held a meeting with Lee, who at that time refused to sign a behavior contract and was then arrested. (O.R.34)

The Board issued a notice of hearing and charges dated December 1, 2004, in which the Board charged Lee with a violation of special condition 7 of his parole, removal or discharge from a rehabilitation program for any reason other than successful completion. (O.R.46) A hearing before the Board was held December 6, 2004 at which Agent Zayon presented the testimony of Alexander Pugliese, director of operations at DRC.

Mr. Pugliese testified that Lee was discharged from the treatment program because he refused to sign a behavior contract, which would modify the terms of his placement, and because of general noncompliance with the facility's rules. Mr. Pugliese indicated that the behavior contract was the facility's last attempt to keep Lee in treatment. Mr. Pugliese further testified that Lee failed to call the facility between 4 and 6 p.m. on September 30, 2004 and did not return to the facility until 9:30 p.m. that day. Lee's behavioral problems included displays of anger and hostility toward the program, a lack of motivation for treatment, a primary concern for social passes and a job, and a failure to call when required. Mr. Pugliese also stated that Lee indicated that he would not pay rent if he were not granted more social passes. For these reasons, Lee was discharged from DRC on October 5, 2004.

Lee testified on his own behalf and indicated that he refused to sign the behavior contract because it was more restrictive than the initial conditions of the treatment program. He further stated that he complied with DRC's requirement regarding remittal of pay stubs and that he called in when necessary. He claimed that he had "earned" fewer restrictions because of his job as a taxi driver. According to Lee, he could not sign the behavior contract because it would force him to terminate his job. He further testified that he was threatened with imprisonment if he did not sign the initial agreement regarding the conditions of his treatment program.

By decision of January 6, 2005, the Board recommitted Lee to serve 8 months backtime as a TPV. Accordingly, the Board calculated Lee's maximum expiration date to be October 24, 2010. Lee filed a request for administrative review, alleging that DRC's requirement that he sign the behavior contract on October 5, 2004 or be returned to prison was in violation of his due process and equal protection rights, was in violation of the original DRC agreement, and constituted terroristic threats and conspiracy.

 On February 24, 2005, the Board denied Lee's request for administrative review. This appeal followed. Our standard of review is limited to determining whether the Board committed a constitutional violation or an error of law and whether the findings of fact are supported by substantial evidence. *Slaymaker v. Pennsylvania Board of Probation and Parole*, 768 A.2d 417 (Pa.Cmwlth.2001).

In his petition for review, Lee asserted that (1) DRC employees unlawfully restricted his ability to attend a habeas corpus proceeding in Somerset County, (2) his arrest for a technical violation of his parole was without authority, (3) he was denied due process of law where the Board restricted his ability to confront his accusers

and (4), the Board's decision is based upon hearsay testimony and is thus unsupported by competent evidence.

■ With regard to Lee's first allegation that DRC employees unlawfully restricted his ability to attend a habeas corpus proceeding in Somerset County, we note the following. On December 1, 2003, Lee filed with this Court a petition for writ of habeas corpus. *See Commonwealth of Pennsylvania ex rel. Stephen Lee v. Raymond Sobina, Superintendent, SCI Somerset,* (Pa.Cmwlth., No. 798 M.D.2003). Upon the Commonwealth's preliminary objections, the petition for writ of habeas corpus was transferred to the Court of Common Pleas of Somerset County because this Court lacked jurisdiction.[1] That action, which was filed four months *prior* to Lee's March 29, 2004 release on parole and ten months *prior* to Lee's violation thereof, cannot be the basis of Lee's claim that the Board revoked his parole in retaliation for his action of filing the writ of habeas corpus. Had the Board wished to retaliate against Lee for filing the petition, it could easily have declined to release Lee on parole in March of 2004.

Moreover, any alleged action or inaction by the parole agents and DRC in restricting Lee's ability to appear in Somerset County for a hearing on the writ of habeas corpus is not germane to the issue of whether the Board had substantial evidence upon which to determine that Lee violated the terms and conditions of his March 2004 parole. Any alleged repercussions or violations of rights related thereto are appropriately addressed by the Court of Common Pleas of Somerset County in its consideration of Lee's habeas corpus

petition. In sum, we cannot afford Lee habeas corpus relief.

■ In his second argument, Lee maintains that the Board denied his right to counsel upon his March 2004 release on parole when it required Lee to sign an acknowledgment containing the terms and conditions of his parole prior to his release. Section 23 of the Act of August 6, 1941, P.L. 861, *as amended,* 61 P.S. § 331.23, commonly referred to as the Parole Act, provides that the Board has the power to make general rules of conduct and supervision of persons placed on parole. The Board is also empowered to prescribe special regulations for particular parolees. *Id.*

"The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." [*Morrissey v. Brewer,* 408 U.S. 471, 477, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ]. Parolees are in a position different from the general population because they are still subject to an extant term of imprisonment and are the focus of society's rehabilitative efforts. Accordingly, parolees are subjected to certain conditions which restrict "their activities substantially beyond the ordinary restrictions imposed by law on private citizens." [*Commonwealth v. Edwards,* 400 Pa.Super. 197, 583 A.2d 445, 447 (1990) ]. Although the offender's freedom may be substantially restricted, the [Board] is vested with broad powers to fashion appropriate conditions of parole where they are intended to effectuate his rehabilitation and reintegration into society as a law-abiding citizen.

---

1. *See* Section 761(a)(1)(i) of the Judicial Code, 42 Pa.C.S. § 761(a)(1)(i), which provides that the Commonwealth Court shall have original jurisdiction in all civil proceedings against the Commonwealth government, including any officer thereof acting in his official capacity, except in actions or proceedings in the nature of applications for a writ of habeas corpus.

*Commonwealth v. Homoki,* 423 Pa.Super. 320, 621 A.2d 136, 140 (1993) (citations omitted).

Although a parolee is entitled to a brief statement of the reasons for the grant or denial of parole, *see* Section 22 of the Parole Act, 61 P.S. § 331.22, we find no support nor does Lee provide any authority for the proposition that a putative parolee is entitled to counsel to negotiate the terms and conditions of parole. The rationale seems quite obvious. Parole is granted at the discretion of the Board, Section 17 of the Parole Act, 61 P.S. § 331.17, and the parolee remains in constructive custody of the Commonwealth. As with an incarcerated individual, the Commonwealth, via the Board, may place restrictions on a parolee's liberty intended to effectuate the parolee's rehabilitation and integration into society. Thus, where a putative parolee indicates an unwillingness to abide by the terms and conditions of parole, the Board may determine that parole is not within the individual's best interest and deny parole. Because the decision of whether to grant or deny parole is within the discretion of the Board and the Board is empowered to prescribe terms and conditions of parole, we find no merit to Lee's contention that he was denied the right to counsel in the execution of his March 29, 2004 parole agreement.

In his third argument, Lee contends that he was denied the right to face his accusers during the Board's December 6, 2004 revocation hearing. Specifically, he maintains that he, as opposed to his counsel, was denied the right to ask Mr. Pugliese and Agent Zayon questions pertaining to his habeas corpus petition and the behavior contract.

In *Commonwealth v. Williams,* 270 Pa.Super. 27, 410 A.2d 880 (1979), the Superior Court held that there is no constitutional right of a defendant who is represented by an attorney to act as co-counsel and that the decision as to whether that is to be allowed is in the sound discretion of the trial court. We believe that the same holding applies in parole revocation matters inasmuch as Pennsylvania has consistently recognized a parolee's right to assistance of counsel in the revocation process. *See Wright v. Pennsylvania Bd. of Probation and Parole,* 743 A.2d 1004 (Pa. Cmwlth.1999).

In this matter, Lee was represented by Attorney Louise Petrillo of the Montgomery County Public Defender's Office. Attorney Petrillo fully participated in the proceedings by conducting cross-examination of the Board's witnesses and by presenting the testimony of Lee. Furthermore, Lee does not allege that counsel was ineffective in her representation. Accordingly, we cannot conclude that the Board denied Lee the right to confront his accusers where he was represented by counsel during the parole revocation hearing.

Lee further suggests that the Board's decision to revoke his parole was based on the hearsay testimony of Agent Zayon that Lee was arrested on October 5, 2004 for behavioral issues and noncompliance of facility rules. Generally, the rules of evidence are not strictly applied in proceedings before the Board. *Mickel v. Pennsylvania Bd. of Probation and Parole,* 810 A.2d 728 (Pa.Cmwlth.2002). Nevertheless, hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa. R.E. 801(c). Hearsay evidence is generally not admissible. Pa. R.E. 802.

Hearsay evidence, which is properly objected to, is not competent to support a finding of the Board. *Walker v. Unemployment Compensation Bd. of Re-*

**640**

*view,* 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976). Hearsay evidence that is admitted without objection, however, is to be given its natural probative effect and may support a finding of the Board if it is corroborated by any other competent evidence. *Id.*

 Lee did not object to Agent Zayon's statement that he was arrested for his failure to execute the behavior contract and for noncompliance with DRC's rules. Consequently, Agent Zayon's statement may be considered by the Board if it is corroborated by other evidence. To that end, Agent Zayon offered the testimony of Mr. Pugliese, director of DRC, regarding Lee's failure to abide by the program's rules. Mr. Pugliese further provided DRC records maintained in the normal course of business. In that Mr. Pugliese is director of DRC and is responsible for the overall operation of the center, including matters of safety, security, accountability, records, and behavior of residents, his testimony was sufficient to authenticate DRC's records. Thus, the log book provided by Mr. Pugliese to support the allegations that Lee failed to abide by the DRC's rules and regulations falls within an exception to the hearsay rule. *See* Pa. R.E. 803(6)(hearsay exceptions; records of regularly conducted activity); (O.R. Item 13, p. 62).

 In his final argument, Lee contends that the Board's procedures denied him due process. The requirements of due process are: (1) written notice to the parolee of the claimed violations of parole; (2) disclosure to the parolee of the evidence against him; (3) an opportunity for the parolee to be heard in person by the fact finder and to present evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body and (6), a written statement by the fact finder as to the evidence it relied upon and the reasons for

revoking parole. *Morrissey,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). We have reviewed the parole revocation hearing transcript, along with the Board's certified record of Lee's history, and find no evidence that Lee's right to due process was violated.

Accordingly, the Board's decision denying Lee's request for administrative review is hereby affirmed.

### ORDER

AND NOW, this 25th day of October, 2005, it is hereby ordered that the February 24, 2005 order of the Pennsylvania Board of Probation and Parole is AFFIRMED.