J-S55008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC TUBBS | : | |
| | : | |
| Appellant | : | No. 3501 EDA 2016 |

Appeal from the Judgment of Sentence September 8, 2014
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013272-2011

BEFORE:  OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 20, 2018**

Appellant, Eric Tubbs, appeals from the judgment of sentence entered on September 8, 2014, following his bench trial convictions for aggravated assault, possessing an instrument of crime (PIC), terroristic threats, simple assault, and recklessly endangering another person (REAP).[1]  Upon review, we vacate Appellant's conviction and sentence for terroristic threats and affirm the judgment of sentence in all other respects.[2, 3]

---

[1] 18 Pa.C.S.A. §§ 2702(a), 907(a), 2706(a), 2701(a), and 2705, respectively.

[2]  On appeal, Appellant challenges the sufficiency of the evidence to support his convictions for aggravated assault, REAP, and terroristic threats.  He does not, however, challenge his convictions for PIC or simple assault.  As such, we have not examined the merits of those two convictions.

[3]  Before we examine the merits of this decision, we note that on August 23, 2018, Appellant filed an application to strike the Commonwealth's brief as untimely.  Upon review of the record, this Court entered a *per curiam* order

The trial court summarized the facts this case as follows:

On September 27, 2010, at approximately 6:00 p.m., [Appellant] attacked the victim, [C.D.], with a hammer, striking him twice in the head.  The victim was working as a handy man and fixing a porch at a home when this assault occurred.  Police came to the scene and [the victim] was taken to the hospital via ambulance for treatment.  After the attack, [Appellant] fled the scene before police [] arrived.  The victim did not know [Appellant], but only by his nickname, Nagee, as told to him by others and he then provided that name to the police.  The victim positively identified [Appellant] in court as the person who attacked him[.]

Almost a year and a half [after the incident], on March 21, 2011, the victim saw [Appellant] on the street and called the police.  When the police arrived, the victim pointed [Appellant] out to the officers, who then made the arrest.  This was the second time the victim [observed Appellant] after the attack[. Appellant] fled before police could be called on the prior occasion.

The events of the attack as testified to by the victim were corroborated by an eyewitness, Willy Ford, who testified that while standing outside of his home, he heard [Appellant] telling the victim to not go into an abandoned home anymore.  As the victim went up the street to work on the porch, [Appellant] got into his car and went after the victim.  Mr. Ford yelled to [Appellant] to leave the victim alone and then saw him jump out of his car, grab a hammer and hit the victim twice in the head.  [Appellant] then jumped back into his car and fled the scene.  Mr. Ford gave a

_____

on May 18, 2018, granting "[t]he Commonwealth's third extension of time to file a brief[,] due by July 10, 2018." *Per Curiam* Order, 5/18/2018.  The order specifically indicated that no further extensions would be granted.  The Commonwealth filed a *nunc pro tunc* request for a fourth extension on July 12, 2018, after the filing deadline had expired.  We denied relief by *per curiam* order on August 7, 2018.  On August 21, 2018, the Commonwealth filed its appellate brief in an untimely manner.  Upon review of the record, the Commonwealth's brief was originally due on February 11, 2018. We granted the Commonwealth three extensions, amounting to almost five months, to file an appellate brief and it still failed to do so in a timely manner.  We are constrained to strike the Commonwealth's brief as untimely and we have not considered it in rendering our decision.

statement detailing this attack to detectives after the victim was released from the hospital.

Philadelphia Police Officer Tracey Cooper testified that she responded to the scene on the date of the attack. Upon arrival, she found the victim bleeding profusely and with blood all over his face and clothes. She was advised that the victim was struck with a hammer by a person named Nagee. She was also provided with [information pertaining to] the vehicle operated by [Appellant], a Mercedes Benz, and a plate number, but it did not belong to that vehicle.

Further, the victim testified that on several occasions prior to the assault, [Appellant] had threatened the victim about him living in an abandoned house.

Trial Court Opinion, 11/27/2017, at 2-3.

The trial court held a bench trial on June 26, 2012 and found him guilty of the aforementioned crimes. On September 8, 2014, the trial court sentenced Appellant to an aggregate term of eight to 16 years of imprisonment with a concurrent term of 5 years of probation. More specifically, the trial court sentenced Appellant to eight to 16 years of imprisonment for aggravated assault, a concurrent term of two-and-one-half to five years of imprisonment for PIC, and a concurrent term of 5 years of probation for terroristic threats.[4] On October 21, 2016, the trial court

---

[4] The trial court did not impose additional sentences for simple assault and REAP, because those convictions merged for sentencing purposes. N.T., 11/8/2014, at 45.

reinstated Appellant's direct appeal rights *nunc pro tunc*. This timely appeal resulted.[5]

On appeal, Appellant presents the following issues[6] for our review:

I. Given the absence of direct evidence of any intent to cause serious bodily injury, and given the minor nature of the injury and the brevity of the attack, was the evidence insufficient to convict Appellant of aggravated assault as a felony of the first degree?

II. Since there was no evidence of any conduct which would have placed the complaining witness in danger of death or serious bodily injury, was the evidence insufficient to support Appellant's conviction for recklessly endangering another person?

III. Given the total absence of evidence that Appellant threatened any criminal act of violence, was the evidence insufficient to convict Appellant of terroristic threats?

Appellant's Brief at 3 (suggested answers omitted).

Appellant's issues challenge the sufficiency of the evidence to support his convictions for aggravated assault, REAP, and terroristic threats. Our standard of review is as follows:

A claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most

_____

[5] Appellant filed a notice of appeal on November 15, 2016. On November 17, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely and subsequently filed a court-approved supplemental concise statement. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on November 27, 2017.

[6] We have reordered Appellant's issues for ease of discussion.

favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

***Commonwealth v. Arcelay***, 190 A.3d 609, 617 (Pa. Super. 2018) (citation omitted).

In his first issue presented, Appellant contends that the Commonwealth failed to prove that he intended to inflict serious bodily injury on the victim in order to sustain his aggravated assault conviction. Appellant's Brief at 13-27. Appellant argues that, "the superficial nature of the injury demonstrates that the degree of force used was not consistent with any intent to inflict death, permanent disfigurement or protracted impairment of bodily function." ***Id.*** at 16. He claims that the "attack consisted of only two blows to the head and a brief scuffle lasting only a couple of seconds, even according to the victim himself." ***Id.*** at 17. Appellant suggests that he was in a position "to have hauled off and struck [the victim] with all his strength so as to fracture [the victim's] skull[,] yet he chose not to do it." ***Id.*** at 23. Accordingly, Appellant maintains that "[g]iven these factors, the most that can be said is that [Appellant] had the intent to – and did – inflict non-serious bodily injury, which would rise to the level of [] simple assault." ***Id.*** at 17.

A person is guilty of aggravated assault if he:

(1)    attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

J-S55008-18

18 Pa.C.S.A. § 2702(a)(1).

In proving aggravated assault, "where the victim suffers serious bodily injury, the Commonwealth need not prove specific intent." ***Commonwealth v. Nichols***, 692 A.2d 181, 185 (Pa. Super. 1997). We have held that a specific intent to cause serious bodily injury can be inferred from the use of a deadly weapon on a vital part of the body. ***Id.***, *citing* ***Commonwealth v. Pandolfo***, 446 A.2d 939, 941 (Pa. Super. 1982) (blows to a portion of the body as vital as the head exhibited intent to inflict serious bodily injury). Our Supreme Court has stated that a deadly weapon need not be inherently lethal. ***Id.***, *citing* ***Commonwealth v. McCullum***, 602 A.2d 313 (Pa. 1992). "An ax, a baseball bat, an iron bar, a heavy cuspidor, and even a bedroom slipper have been held to constitute deadly weapons under varying circumstances." ***Id.*** (citation omitted).

Here, Appellant does not dispute that he intentionally struck the victim twice with a hammer to the head. Moreover, Appellant does not dispute that a hammer, in this instance, constituted a lethal weapon. He does not dispute that the head is a vital part of the body. Instead, Appellant argues that the attack was restrained and could have inflicted more severe injuries. However, because a specific intent may be inferred from the use of a deadly weapon to

- 6 -

a vital part of the body, we discern no error of law or abuse of discretion by the trial court in convicting Appellant of aggravated assault.[7]

Next, Appellant argues that the Commonwealth failed to present evidence that the victim was in fear of death or serious bodily injury in support of his REAP conviction. Appellant's Brief at 31-33. Because REAP is a lesser included offense of aggravated assault, where the evidence is sufficient to support a claim of aggravated assault, it is also sufficient to support REAP. **See Commonwealth v. Bullock**, 170 A.3d 1109, 1121 (Pa. Super. 2017). Having already determined that the Commonwealth presented sufficient evidence to support Appellant's aggravated assault conviction, we conclude the evidence also supported his REAP conviction as a matter of law. **Id.**

Finally, we address Appellant's contention that there was insufficient evidence to support his conviction for terroristic threats. Appellant argues

_____

[7] Further, we reject Appellant's reliance on **Commonwealth v. Robinson**, 817 A.2d 1152 (Pa. Super. 2003) and **Commonwealth v. Alexander**, 383 A.2d 887 (Pa. 1978). In **Robinson**, our Court was tasked with determining whether striking a victim in the spine with a gun, during the course of a robbery, constituted aggravated assault. We determined that the "clear intent [] was to take the [victim's] backpack, not to inflict serious bodily injury" and "there was no indication the blow was delivered for any other purpose[.]" **Robinson**, 817 A.2d at 1161. By contrast, in this case, there is no dispute that Appellant had a single purpose to strike the victim in the head with a hammer. In **Alexander**, the evidence showed the defendant delivered a single punch to the victim's face and walked away. Our Supreme Court determined that "there [] simply [were] no [] circumstances to support a finding that [Alexander] harbored the requisite intent" to inflict serious bodily injury. **Alexander**, 383 A.2d at 889. Here, by comparison, Appellant used a potentially lethal weapon and struck the victim twice in the head. As such, we conclude that **Robinson** and **Alexander** are inapplicable herein.

that although the victim testified generally that Appellant threatened him, there was no evidence that Appellant threatened him with an act of violence. Appellant's Brief at 27-30. Appellant suggests that the Commonwealth only proved that Appellant made demands to vacate an abandoned property and that "[w]hile possibly unpleasant, such demands simply [were] not the equivalent to threats to commit a criminal act" as required under the terroristic threats statute. *Id.* at 29. Based upon our standard of review and our review of the record, we agree for the reasons that follow.

Relevant herein, "a person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." *Commonwealth v. Richard*, 150 A.3d 504, 514 (Pa. Super. 2016) (citation omitted). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." *Id.* Moreover, "it is unnecessary for an individual to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement."

***Commonwealth v. Sinnott***, 976 A.2d 1184, 1188 (Pa. Super. 2009) (citation omitted), *affirmed in part*, *reversed in part on other grounds*, 30 A.3d 1105 (Pa. 2011).

Here, the trial court noted that "the victim [] testified that on several occasions prior to the assault, [Appellant] had threatened the victim about him living in an abandoned house." Trial Court Opinion, 11/27/2017, at 3. The trial court concluded that Appellant "repeatedly threatened the victim in this case which eventually escalated to a point where a physical attack actually occurred." ***Id.*** at 7.

Based upon the record before us, including portions of the transcript relied upon by the trial court, we cannot agree with the conclusion that Appellant threatened to commit a crime of violence with the intent to terrorize the victim. With regard to the actual, physical confrontation, the victim testified that Appellant "blindsided him."[8] N.T., 6/26/2012, at 12. According to the victim, Appellant did not utter a word during the attack or when he saw the victim earlier that same day. ***Id.*** at 22. The victim claimed, however, that he was "threatened" by Appellant "three times before" the incident. ***Id.*** at 23. Thereafter, the following exchange occurred:

Defense counsel: What did [Appellant] threaten you with?

_____

[8] Willy Ford, eyewitness to the altercation, testified similarly. N.T., 6/26/2012, at 34. There was no evidence that Appellant spoke to the victim during the attack. Moreover, Ford did not witness other verbal confrontations as discussed below.

The victim:        He didn't threat[en] me with – he threatened me with his mouth.

Defense counsel:  And what did he say to you?

The victim:        Just words, just words, just words.  He told me to get out.

*Id.*  Subsequently, the victim detailed specific instances where Appellant "threatened" him on the street by telling him to stay away from the abandoned house at issue.  *Id.* at 24-25.

Even when we view the evidence in the light most favorable to the Commonwealth, as our standard requires, we discern there was insufficient evidence that Appellant threatened a crime of violence against the victim.  At best, the evidence reveals that Appellant told the victim to leave the area on prior occasions before the attack.  The victim characterized those confrontations as threatening, but he was unable to articulate a crime of violence that Appellant intended to commit.  While a crime of violence may be inferred based upon the surrounding circumstances, there was no evidence here that Appellant communicated an intent to harm or physically menace the victim during the prior instances when Appellant told the victim to stay away from the abandoned residence.  The victim himself testified that Appellant used confrontational language, but no threat of force.  During the actual assault, Appellant did not speak, so he did not communicate any threats or reference their earlier exchanges.  There was simply no evidence that Appellant threatened a crime of violence against the victim prior to, or during,

the actual attack. The trial court essentially determined that because the assault took place after several verbal exchanges between Appellant and the victim, such evidence was sufficient to support a conviction for terroristic threats. This decision was in error. Hence, we are constrained to vacate Appellant's conviction for terroristic threats.

"If our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan." **Commonwealth v. Thur**, 906 A.2d 552, 569 (Pa. Super. 2006) (citation omitted). "By contrast, if our decision does not alter the overall scheme, there is no need for a remand." **Id.** (finding no need to remand because vacating DUI conviction did not disturb sentencing scheme where the DUI sentence was concurrent with other terms and did not increase the aggregate length of incarceration). Here, the trial court imposed a term of probation for terroristic threats to be served concurrently to the sentences for the remaining convictions. Vacating the terroristic threats conviction, and its attendant sentence, does not change the length of Appellant's aggregate term of imprisonment and the overall sentencing scheme remains the same. Hence, we conclude it is unnecessary to remand the matter for resentencing.

Motion to strike the Commonwealth's brief granted. Conviction and sentence for terroristic threats vacated. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/20/18</u>