J-A23021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LOUIS SCOTT ANDERSON, | |
| Appellant | No. 1806 WDA 2018 |

Appeal from the Judgment of Sentence Entered December 4, 2018
In the Court of Common Pleas of Venango County
Criminal Division at No(s):  CP-61-CR-0000087-2018

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                 **FILED  DECEMBEER 16, 2019**

Appellant, Louis Scott Anderson, appeals from the judgment of sentence of a term of imprisonment of 12 months, less one day, to 24 months, less one day, imposed after he was convicted by a jury of illegal dumping of methamphetamine waste, 35 P.S. § 780-113.4(b)(1).  After careful review, we affirm.

For purposes of this appeal, we need not reproduce the facts or procedural history of Appellant's case, which were aptly summarized by the trial court in its Pa.R.A.P. 1925(a) opinion.  **See** Trial Court Opinion (TCO), 2/11/19, at 1-4.  Herein, Appellant avers that the trial court erred by denying his pretrial motion to suppress evidence discovered during a warrantless search of his home by his wife's parole officer.

In assessing Appellant's claim, we have reviewed the certified record, the briefs of the parties, and the applicable law. We have also considered the thorough and well-reasoned opinion of the Honorable Robert L. Boyer of the Court of Common Pleas of Venango County. We conclude that Judge Boyer sufficiently addressed the arguments presented by Appellant herein, and he correctly deems Appellant's issue meritless. Therefore, we adopt Judge Boyer's opinion as our own and affirm Appellant's judgment of sentence for the reasons set forth therein.[1]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2019

---

[1] We note that on August 22, 2019, Appellant's counsel, Matthew C. Parson, Esq., filed a petition to withdraw his representation of Appellant, as he was no longer employed by the Venango County Public Defender's Office. Attorney Parson stated that another attorney had been assigned to Appellant's case, which is confirmed by the fact that Tina M. Fryling, Esq., entered her appearance on Appellant's behalf on May 23, 2019. In light of this record, we grant Attorney Parson's petition to withdraw.

IN THE COURT OF COMMON PLEAS OF VENANGO COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA :
:
:
v. . : CR. Nos. 87—2018
:
:
:
LOUIS SCOTT ANDERSON, :
Defendant. :

## OPINION OF COURT

AND NOW, this ___//___ day of February, 2019, the Court has before it Petitioner's Concise Statement of Errors Complained of on Appeal. Pursuant to Pa. R.A.P. 1925(a)(1), the Court issues the following opinion.

### Factual Background and Procedural History

The facts can be gleamed from the record of the OPTM hearing. Agent Harriger, a parole agent for the Commonwealth of Pennsylvania, testified Defendant's wife, Lisa Anderson, was under his supervision for parole. *OPTM Transcript ("O.T.")* June 22, 2018; 5:18-21. Ms. Anderson was approved to live at 176 Swamp Road, Utica, Pennsylvania, where Defendant also resided. *Id.* 6:5-6. Agent Harriger testified he has never seen Ms. Anderson at any other residence. *Id.* 7:12-13. In January 2018, Agent Harriger went to the residence to conduct a home-visit. *Id.* 7: 17-20. When Agent Harriger arrived, he approached the residence by foot and observed a plastic bottle on the porch with a clear hose coming out of the top of it. *Id.* 9:12-15. He knocked on the door and Ms. Anderson let him in the residence. *Id.* 9:16-17, 39:10-12.

Agent Harriger testified he saw Defendant and spoke with him briefly about different conditions of parole, then continued to conduct a visual inspection of the residence. *Id.* 9:22-25. Agent Harriger noticed Defendant was gathering items on a kitchen table such as plastic bottles, hoses, plastic bags, and putting them in different areas of the kitchen. *Id.* 9:25, 10:1-4. A mattress

1

was on the floor in the living room, and a marijuana pipe was next to the mattress. *Id.* 10:4-6. Agent Harriger talked with Ms. Anderson and Defendant for about ten minutes about general compliance with supervision, then left the residence. *Id.* 10:6-10. Based on the marijuana pipe and the suspicions bottles and bags at the residence, Agent Harriger called the police and his supervisor. *Id.* 11:15-19. Trooper Schmader of the Pennsylvania State Police arrived and met Agent Harriger outside of the residence. Together, they approached the residence. They saw Defendant outside at the garbage, and Agent Harriger detained him for safety purposes to perform a search while Trooper Schmader went into the home and detained Ms. Anderson. *Id.* 13:8-11; 42:1-15. Defendant testified that Trooper Schmader watched him and Ms. Anderson while Agent Harriger searched the house. *Id.* 43:1-8. Agent Harriger searched the house and found two plastic bottles in the freezer with a "very strong ammonia-type smell" coming out of them, and a 404 cleaner bottle with a clear plastic hose coming out of it in the garbage, and a tote wrapped in plastic outside of the house. *Id.* 14:13-25, 15:1-3. Agent Harriger showed the items to Trooper Schmader, who then called to request backup. While waiting for backup, Ms. Anderson had a medical emergency and had to be transported by ambulance away from the residence, and Defendant became very hostile towards Agent Harriger and Trooper Schmader. *Id.* 15:20-34.

Trooper Keith Johnson testified that he and Trooper Jared Young of the Pennsylvania State Police arrived on the scene, and when they entered the residence they saw Defendant standing close to Agent Harriger and screaming in his face. *Id.* 30:10-14, 31:1-5. After Trooper Johnson sat Defendant on the couch, he spoke with Agent Harriger to find out what was going on. *Id.* 32: 10-16. Agent Harriger showed Trooper Johnson the materials found in the yard, the freezer, and the garbage, and told him that he suspected Ms. Anderson and Defendant were making meth. *Id.* 32: 15-32. Trooper Johnson testified he believed Defendant was making meth,

2

so he arrested him, and went back to the barracks to prepare a search warrant. *Id.* 34:1-8.

Subsequently, Defendant was charged with the following:

**Count 1** - Operating a Methamphetamine Lab, in violation of 35 Pa. C.S.A. § 780-113.4(a)(1), a Felony 2

**Count 2** - Operation of Methamphetamine Laboratory, in violation of 18 Pa. C.S.A. § 7508.2(a), a Felony 2

**Count 3** - Operating Methamphetamine Lab/Illegal Dumping Meth. Waste, in violation of 35 Pa. C.S.A. § 780-113.4(b)(1), a Felony 3

**Count 4** - Manufacture, Deliver, or Possess with Intent to Manufacture, in violation of 35 P.S. § 780-113(a)(30), a Felony

**Count 5** - Possessing Precursors with Intent to Manufacture, in violation of 35 P.S. § 780-113.1(a)(3), a Felony

**Count 6** - Possession with Intent to use Drug Paraphernalia, in violation of 35 P.S. § 780-113(a)(32), a Misdemeanor.

*Information*, February 14, 2018. Defendant filed a Motion for Suppression arguing the parole officer did not have probable cause to enter the home, so the entry of the home was unconstitutional without a warrant. *Defendant's Omnibus Pretrial Motion*, April 5, 2018. A hearing was held to address the OPTM and this Court subsequently denied the motion. A trial was held on October 18 and 19, 2018, and a jury found Defendant guilty of Count 3, Illegal Dumping of Methamphetamine Waste. He was sentenced to pay a fine of $500 and undergo an imprisonment during the period of "not less than twelve (12) months less one (1) day, and not more than twenty-four (24) months less one (1) day." *President Judge Lobaugh's Sentence Order*, December 4, 2018.

On December 21, 2018, Petitioner filed his Notice of Appeal with the Superior Court and thereafter received notice from this Court directing compliance with Pa. R.A.P. 1925. Petitioner filed his Concise Statement on August 13, 2018. Petitioner raises the following issue on appeal:

1. Whether the suppression court erred as a matter of law or abused its discretion in denying the defendant's motion for suppression

3

which asserted that the police used the probation officer as stalking horse to avoid acquiring a warrant to search his property and his home

*Petitioner's Concise Statement.*

## Analysis

We begin by setting forth the Superior Court's well-established scope and standard of review of an order denying a suppression motion:

> When we review the ruling of a suppression court, we must ascertain whether its factual findings are supported by the record and whether the inferences and legal conclusions drawn from those facts are reasonable. *Commonwealth v. Lewis*, 535 Pa. 501, 504 636 A.2d 619, 621 (1994). Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense that remains uncontradicted in context of the whole record. *Id.* If there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are in error. *Id.*

*Commonwealth v. Smith*, 917 A.2d 848, 850 (Pa. Super Ct. 2007) quoting *Commonwealth v. Petroll*, 738 A.2d 993, 998 (Pa. 1999). This Court ruled and maintains that the search was valid based upon Ms. Anderson's parolee status, combined with reasonable suspicion formed while viewing suspected contraband during a valid home-visit. *Judge Boyer's Order of Court*, July 24, 2018.

"[T]he threshold question . . . in any Fourth Amendment inquiry is whether the conduct of the police amounted to a search." *Commonwealth v. Robbins*, 647 A.2d 555, 558 (Pa. Super. Ct. 1994). Not every intrusion into an offender's private area constitutes a "search" within the meaning of the Fourth Amendment or Article I, Section 8 of the Pennsylvania Constitution. "[P]robationers and parolees have limited Fourth Amendment rights because of a diminished expectation of privacy." *Commonwealth v. Moore*, 805 A.2d 616, 619 (Pa. Super. Ct. 2002).

4

Parole Agents and Probation Officers are permitted to make home visits to offenders under their supervision for the purpose of monitoring the offender's compliance with the terms and conditions of parole or probation. *Commonwealth v. Smith*, 85 A.3d 530 (Pa. Super. Ct. 2014). The statute governing the supervisory relationship between parole agents and parolees and their rights, provides in relevant part:

### § 6153. Supervisory relationship to offenders

(a) **General rule.** —Agents are in a supervisory relationship with their offenders. The purpose of this supervision is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public. Supervision practices shall reflect the balance of enforcement of the conditions of parole and case management techniques to maximize successful parole completion through effective reentry to society.

. . .

(d) **Grounds for personal search.** –

. . .

(2) A property search may be conducted by an agent if there is *reasonable suspicion* to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.

. . .

(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

    (i)    The observations of agents.

    (ii)    Information provided by others.

    (iii)    The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of agents with the offender.

(vi) The experience of agents in similar circumstances

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S.A. § 6153(a), (d)(2) and (d)(6) (emphasis added). Essentially, Section 6153 authorizes county parole agents to search an offender's person or property, if there is reasonable suspicion to believe the probationer possess contraband or other evidence of violations of the conditions of supervision. *Commonwealth v. Parker*, 152 A.3d 309 (Pa. Super. Ct. 2016); *Commonwealth v. Chambers*, 55 A.3d 1208 (Pa. Super. Ct. 2012).

"[T]he threshold question in cases such as this is whether the probation officer had reasonable suspicion of criminal activity or a violation of probation prior to the . . . search." *In re J.E.*, 907 A.2d 114, 119 (Pa. Super. Ct. 2006). In looking at the first factor, we believe the analysis in *Smith, supra*, is useful. In *Smith*, a parolee signed a form after his release from prison expressly permitting a parole agent to search his person, property and residence without a warrant. *Smith*, 85 A.3d at 532. The parolee's girlfriend lived at the parolee's authorized residence, and she consented to unannounced home visits by parole agents and warrantless searches based on reasonable suspicion that the parolee violated the conditions of parole. *Id.* Parole agents visited the parolee's approved residence for a routine "house check," and during a walk-through of the residence, one agent detected a strong odor of marijuana emanating from the basement. *Id.* at 532-533. The agent went down to the basement and found marijuana, cash, a scale, unused baggies, and a picture of the parolee. *Id.* at 533. The parole agents notified the

6

police and waited for the police to respond. *Id.* Before the police arrived, the parolee's girlfriend returned to the residence. *Id.* The police arrived and performed a search of the residence, and recovered more marijuana, ammunition, money, and a picture of the parolee. *Id.* The girlfriend was taken into custody and transported to the police station. *Id.* The parolee was charged, and subsequently sought to suppress the evidence, arguing the parole agents' visit to his residence constituted a search without reasonable suspicion. *Id.* However, the trial court denied the motion, and the Superior Court affirmed the suppression court's decision, with the following reasoning:

> We conclude that the state parole agent's actions in walking through [the parolee's] residence did not constitute a search. Rather, the parole agents were performing their supervisory duties by visiting [the parolee] at his home to ensure compliance with the conditions of his probation. The visit, which did not progress beyond a visual inspection, was limited in its scope and intrusiveness. The record indicates that the walk-through was of short duration, occurring between 10:10 p.m. and 10:25 p.m. Additionally, the record does not indicate that the parole agents did anything more than walk through the various rooms checking for anything in plain sight.

> During this lawful visit, Agent Peterson smelled marijuana emanating from [the parolee's] basement, and at that juncture, he developed the requisite reasonable suspicion to conduct a search for the marijuana. Notably, the "plain view" doctrine renders a search and seizure permissible where: (1) the government officials have not violated the Fourth Amendment in arriving at the location from which the item could be view; (2) the item is in plain view; (3) the incriminating character of the item is immediately apparent; and (4) the government officials have a lawful right of access to the item itself." *Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 656 (2010) . . . Given that the parole agents were visiting [the parolee] at his residence in accordance with their supervisory duties, the smell of marijuana gave rise to reasonable suspicion for the agents to conduct a search for the contraband that was ultimately located in the basement.

*Id.* at 537.

In the present case, Agent Harriger entered Defendant's residence, with the purpose to verify Ms. Anderson was complying with terms and conditions of parole. Contrary to

7

Defendant's argument at the hearing, there was never a change to Ms. Anderson's approved residence,[1] and Agent Harriger was permitted to perform a home-visit. During his walkthrough, Agent Harriger observed a plastic bottle with a clear hose coming out of the top sitting on the front porch and a marijuana pipe on the floor. The marijuana pipe is obviously a violation of parole because it is a prohibited drug, and he testified he believed the bottles and hoses were materials used to operate a meth lab.[2] These observations contribute to finding reasonable suspicion, because they are materials of drug activity, and a search will aid the agent in assessing Ms. Anderson's compliance with parole conditons. Therefore, the search is supported by the requisite reasonable suspicion

The portion of this case Defendant narrows his focus on is the presence of a police officer during the search. We begin by explaining how Trooper Schmader arrived on the scene. After Agent Harriger left the residence, he had made up his mind to conduct a search of the residence. Under Section 6153(d)(3), "Prior approval of a supervisor shall be obtained for a property search absent exigent circumstances. No prior approval shall be required for a personal search." Agent Harriger testified that he called his supervisor and obtained approval to perform a search. He also called the Pennsylvania State Police because he needed backup "due to safety issues being alone in the area." *O.T.* June 22,

---

[1] On December 11, 2017, Ms. Anderson contacted Agent Harriger to say she was staying with her daughter because of domestic abuse issues with Defendant. Agent Harriger permitted Ms. Anderson to stay with her, and on January 6, 2018, he submitted a pre-transfer request for the daughter's address. On January 16, 2018, Agent Harriger called Ms. Anderson who reported she returned to Defendant's home and they were working out their issues and she was thinking of withdrawing her request. Agent Harriger told Ms. Anderson to report to Franklin Police Department whether or not she wanted to withdraw the request, and also told her to remain at Defendant's address. Agent Harriger called the investigating agent in Erie to stop the pre-transfer investigation until Ms. Anderson decided what she wanted to do. *Pennsylvania Board of Probation and Parole Summary of Investigation* p. 3.

[2] Agent Harriger testified he has taken several classes in recognition of drugs and how they are manufactured and made. *O.T. June 22, 2018*; 16:8-14. He also testified that he has encountered meth labs previously, and he has seen similar chemicals and items used to make meth. *Id.* 16:20-25.

8

2018; 12:5-6. Now, Defendant argues the police used the parole agent as a stalking horse to avoid acquiring a warrant to search Defendant's home.

Under the "stalking horse" doctrine, Pennsylvania courts invalidated probation officers' searches and seizures of evidence when the probation officers essentially "switches hats," and in all relevant respects became police officers. *Commonwealth v. Altadonna*, 817 A.2d 1145 (Pa. Super. Ct. 2003). Most cases analyzing the "stalking horse" doctrine predated Section 6153 and its predecessor statute, but the doctrine is still relevant to the extent a probation officer or parole agent aids the police by statutorily circumventing the warrant requirement, based on reasonable suspicion, instead of the heightened standard of probable cause. *Id.* The Superior court held a parole agent acted as a "stalking horse" for police when defendant's parole agent arrived at his home with two police officers and defendant's employer. *Commonwealth v. Brown*, 361 A.2d 846 (Pa. Super. Ct. 1976). In *Brown*, the Court found it important that, prior to going to the defendant's home, the parole agent asked police to assist him in arresting defendant because he suspected defendant stole goods from the employer. *Id.* In another case, the Superior Court did not find a probation officer acted as a "stalking horse" where he made an unannounced home visit to verify defendant was complying with terms and conditions of probation, and during the walkthrough saw drug paraphernalia and a shotgun in plain view. *Commonwealth v. Parker*, 152 A.3d 309 (Pa. Super Ct. 2016). The probation officer called his supervisor and the local police department. *Id.* Three police officers went to the probation officer's location, and the probation officer subsequently searched the residence. *Id.* The Court noted the probation officer's testimony, which revealed it was "standard predicate" to contact local police in such circumstances, and there was no prior arrangement with the police regarding the defendant's residence. *Id.* at 322-333.

9

Here, the situation is similar to the situation in *Parker*, therefore the "stalking horse" doctrine is not relevant. Agent Harriger acted only as a parole agent; He simply went to his parolee's approved residence to do a permissible home-visit, made observations that amounted to reasonable suspicion that Ms. Anderson was violating parole, and wanted to perform a search to verify compliance. He got the proper authorization from his supervisor, and he called the police to provide safety. We emphasize Agent Harriger's decision to call the police was prudent given the fact that he was alone and a parole agent's job is not always safe, and we also found that the parole agent in *Parker* took the same precautions. Moreover, Trooper Schmader entering the house before Agent Harriger does not invalidate the search. He only entered the house to detain Ms. Anderson pursuant to Section 6153(d)(4),[3] while Agent Harriger detained Defendant. There was no testimony accusing Trooper Schmader doing anything besides detaining the parolee. Defendant even testified that Trooper Schmader stayed and watched him and Ms. Anderson while Agent Harriger performed a search. *See O.T.* June 22, 2018; 42:24-25, 43:1-3. Furthermore, Defendant's lack of parolee status should not be considered because he knowingly lived in a home that was subject to all the conditions of parole by virtue of his wife, including home-visits and searches justified by reasonable suspicion. Lastly, the fact that the police found incriminating evidence against Defendant does not invalidate the search. The Superior Court has stated, "A search is not unlawful simply because it also benefits police or that incriminating evidence found is turned over to police for use in criminal prosecution." *Parker, Supra,* citing *Commonwealth v. Williams,* 692 A.2d 577 (Pa. 1997). The police may do whatever they see fit

---

[3]"The offender may be detained if he is present during a property search. If the offender is not present during a property search, the agent in charge of the search shall make a reasonable effort to provide the offender with notice of the search, including a list of the items seized, after the search is completed."

10

with the items provided to them by Agent Harriger, and they chose to obtain a search warrant and pursue criminal charges against Defendant.

## Conclusion

For the aforementioned reasons, the Court respectfully requests the superior court dismiss Petitioner's appeal in the above-captioned matter.

BY THE COURT,

Robert L. Boyer, J.

cc: DA
Matthew C. Parson, Esq.
LCW

11