J-A14034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                             :              PENNSYLVANIA
                             :
        v.                   :
                             :
                             :
                             :
KASHIF ROBERTSON             :
                             :
        Appellant            :  No. 1161 MDA 2021

Appeal from the Judgment of Sentence Entered August 25, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0002292-2019

BEFORE:   BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:      **FILED: AUGUST 16, 2022**

Kashif Robertson appeals from the August 25, 2021 modified, aggregate

judgment of sentence of 2½ to 5 years' imprisonment, followed by 5 years'

probation, imposed after a jury found him guilty of two counts each of

possession with intent to distribute a controlled substance ("PWID") and

possession of a controlled substance, and one count of possession of drug

paraphernalia.[1]  After careful review, we affirm the judgment of sentence.

The suppression court summarized the factual background of this case

as follows:

> [O]n February 2, 2019, [Appellant] was pulled over
> for a traffic stop by Officer Chad McGowan of the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), and (a)(32), respectively.

Harrisburg Police Department for illegal window tint. During the traffic stop, Officer McGowan asked [Appellant] if he was active with probation or parole. [Appellant] responded in the negative. When Officer McGowan returned to his vehicle, he informed Adult Probation Officers [(hereinafter "PO")] [Daniel] Kinsinger and [Bruce] Cutter that [Appellant] indicated that he was not active with probation or parole. [POs] Kinsinger and Cutter knew [Appellant] to be on probation. Officer McGowan returned to [Appellant's] vehicle, returned his documents, and told [Appellant] that he was free to leave.

Before [Appellant] left, [POs] Kinsinger and Cutter approached the vehicle to make contact with [Appellant]. [PO] Cutter opened [Appellant's] door and asked him to step out of the vehicle after informing [Appellant] that he was in violation of his conditions of probation. Once out of the vehicle, [POs] Kinsinger and Cutter performed a search of [Appellant]'s vehicle. Inside, they found a purple Crown Royal bag containing cash totaling $8,000 and an empty cigarette container in the center console area that contained loose marijuana.

A search of the [Appellant] showed that he was carrying cash totaling $4,598.00 in both his pants pocket and his wallet. The [POs] then took [Appellant] to the front of Officer McGowan's vehicle. At this time, Officer McGowan smelled an odor of marijuana coming from [Appellant's] person. [PO] Kinsinger conducted a second search of [Appellant's] person and felt a hard lump in [Appellant's] groin area. At this time, [Appellant] was detained and placed in handcuffs. As handcuffs were being placed on [Appellant], [Appellant] attempted to break free and run. The officers were able to detain [Appellant]. After [Appellant] was secured, [PO] Kinsinger found six baggies of cocaine and one baggie of marijuana in [Appellant's] groin area.

Suppression court opinion, 2/10/21 at 1-2.

The trial court summarized the relevant testimony presented at trial as follows:

> Amber Gegg (hereinafter, Ms. Gegg) of the Pennsylvania State Police Harrisburg Regional Laboratory offered expert testimony as a drug analyst. Ms. Gegg analyzed the narcotics that were sent to her regarding Appellant. Through testing, Ms. Gegg was able to identify the white substances found in the plastic baggies as cocaine and marijuana. The powder and crack cocaine weighed approximately 26 grams.
>
> Detective John Goshert (hereinafter, "Detective Goshert") of the Dauphin County Criminal Investigation Division offered expert testimony as an expert in the field of street level drug trafficking. Detective Goshert testified about the difference between powder cocaine and crack cocaine. Detective Goshert testified that crack cocaine is cocaine base. Crack cocaine, or cocaine base, is a smokable form of cocaine that holds its shape. Powder cocaine is cocaine that is in a powder form that is either dissolved by a heat source in water in order to be injected or smoked or snorted in its powder. One can differentiate between crack cocaine and powder cocaine by looking at the physical consistency of it. Detective Goshert testified that the Pennsylvania State Police Laboratory does not differentiate between crack cocaine and powder cocaine on their reports. Detective Goshert further testified that Appellant did not have any taxable income from the date Appellant was pulled over by Officer McGowan and prior.
>
> Appellant testified that he was in the process of returning drugs that he picked up that day from a dealer when he was pulled over by Officer McGowan. Appellant stated that he tested the drugs and he was not satisfied with the quality. He further testified that he had a large amount of cash in his vehicle because he worked as a barber and the money was to pay taxes.

Trial court opinion, 11/1/21 at 3-4 (citations to notes of testimony omitted).

On August 1, 2019, Appellant filed an **omnibus** pretrial suppression motion challenging the legality of the traffic stop; the scope and duration of the traffic stop; the actions of the probation officers at the scene of the arrest; and the legality of the initial pat-down of his person. Appellant filed a supplemental motion on October 29, 2019. Following a hearing, the suppression court denied Appellant's suppression motion on August 11, 2020. On October 7, 2020, Appellant filed a "Petition for Disqualification (Recusal) of Judge [Deborah E. Curcillo]," which was ultimately denied on October 15, 2020.

Thereafter, on March 10, 2021, Appellant proceeded to a jury trial and was found guilty of two counts each of PWID and possession of a controlled substance and one count of possession of drug paraphernalia. On May 26, 2021, the trial court sentenced Appellant to an aggregate term of 4 to 8 years' imprisonment, followed by 5 years' probation. On June 7, 2021, Appellant filed a post-sentence motion to modify his sentence. Following a hearing on August 25, 2021, the trial court modified Appellant's judgment of sentence and resentenced him to 2½ to 5 years' imprisonment, followed by 5 years'

probation. This timely appeal followed on September 2, 2021.[2] Appellant and

the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Did the [suppression] court err when it found reasonable suspicion existed to stop [Appellant's] vehicle for a suspected window tint violation, where the seizing officer failed to point to "specific and articulable facts" which led him to suspect criminal activity was afoot for a violation of the inspection manual?

2. Did the [suppression] court err when it denied [Appellant's] OPTM for the Commonwealth's failure to establish a reasonable suspicion for Dauphin County Adult Probation to seize him after Harrisburg City Police advised him that he was free to leave without an oral or written warning?

3. Did the [suppression] court err when it denied [Appellant's] OPTM by finding that the duration of the traffic stop was proper as the focus of the stop was the suspected window tint violation, and any inquiry as to [Appellant's] status on supervision or conversations with probation and parole following the officer's initial encounter as well as the duration of the search unnecessarily prolonged the traffic stop?

4. Did the [suppression] court err when it denied [Appellant's] OPTM for suppression of the evidence when it found that probation and parole did not act like "stalking horses" for the police by circumventing the warrant

_____

[2] We note that although Appellant purports to appeal from the March 10, 2021 guilty verdict, "[i]n a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa.Super. 2001) (**en banc**), **appeal denied**, 800 A.2d 932 (Pa. 2002).

requirement based on reasonable suspicion, instead of the heightened standard of probable cause, as the search was nothing more than a ruse for a police investigation[?]

5. Did the [suppression] court err when it denied [Appellant's] OPTM when it found that probation and parole did not exceed the scope of *Terry* when the protective search of [Appellant] went beyond what was necessary to determine if he was armed[?]

6. Did the [suppression] court err when it denied [Appellant's] OPTM when it found that the second search of [Appellant] by probation shaking out his pants did not exceed the scope of *Terry* or the plain feel doctrine[?]

7. Did the trial court err when it did not recuse itself from this matter due to the appearance of impartiality, bias, prejudice or ill will, where the court denied [Appellant's] right to a full suppression hearing and continuously allowed the Commonwealth to make untimely filings pertaining to the suppression matter and wholly adopted the Commonwealth's findings of fact and legal conclusions[?]

8. Did the Commonwealth present sufficient evidence that [Appellant] possessed a controlled substance, specifically crack cocaine, and that he did so with the intent to deliver it when the only scientific proof presented from the laboratory was a report that identified the substance as cocaine, not cocaine base[?]

9. Did the trial court abuse its discretion in denying counsel's post-sentence motion where the guilty verdict for Count 2 — [PWID] (crack cocaine) was against the weight of the evidence as the Commonwealth failed to present scientific evidence in the form of a laboratory report that confirmed that the substance that was tested was cocaine base[?]

Appellant's brief at 1-2.

## I. Suppression Motion

Appellant's first six claims relate to the denial of his suppression motion. Our standard of review in addressing a challenge to a denial of a suppression motion is well settled.

> [Our] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), *appeal denied*, 135 A.3d 584 (Pa. 2016).

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee an individual's freedom from unreasonable searches and seizures." *Commonwealth v. Bostick*, 958 A.2d 543, 550 (Pa.Super. 2008) (citation and internal quotation marks omitted), *appeal denied*, 987 A.2d 158 (Pa. 2009). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to

justify their interactions with citizens to the extent those interactions compromise individual liberty." ***Commonwealth v. Reppert***, 814 A.2d 1196, 1201 (Pa.Super. 2002) (citation omitted).

This court has recognized three types of interactions between members of the public and the police:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Way***, 238 A.3d 515, 518 (Pa.Super. 2020) (citation omitted). Thus, pursuant to the Fourth Amendment, a person may not be lawfully seized, either by means of an investigative detention or a custodial detention, unless the police possess the requisite level of suspicion.

Appellant contends that the suppression court erred in concluding that Officer McGowan possessed the requisite suspicion to stop his vehicle for a violation of the Motor Vehicle Code ("MVC"). Appellant's brief at 26-32.

The level of suspicion that a police officer must possess before initiating a traffic stop is codified in 75 Pa.C.S.A. § 6308(b), which provides as follows:

> **(b) Authority of police officer.--**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a

> vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

This court has long recognized that "mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation." *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa.Super. 2010) (*en banc*) (citation omitted), *appeal denied*, 25 A.3d 327 (Pa. 2011). Rather, police officers are required to possess probable cause to stop a vehicle based on observed violation of the MVC or otherwise non-investigable offense. *Id.*

"Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." *Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa.Super. 2017) (citation omitted).

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a prima facie showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Thompson***, 985 A.2d 928, 931 (Pa. 2009) (internal quotation marks and citations omitted).

Instantly, the suppression court found that Officer McGowan's testimony at the suppression hearing established that he possessed the requisite probable cause to stop Appellant's vehicle for illegal window tint in contravention of 75 Pa.C.S.A. § 4107(b)(2).[3] ***See*** suppression court opinion, 2/10/21 at 2-3. We agree with this assessment.

The record reflects that Officer McGowan testified that in the late afternoon hours of February 2, 2019, he was on patrol with members of the Street Crimes Unit when he observed Appellant's vehicle make a right-hand turn and began traveling east on the 400 block of Muench Street. Notes of

---

[3] Section 4107(b)(2), **Operating a Vehicle With Unsafe Equipment**, provides as follows:

> (b) Other violations.--It is unlawful for any person to do any of the following:
>
> . . . .
>
> (2) Operate, or cause or permit another person to operate, on any highway in this Commonwealth any vehicle or combination which is not equipped as required under this part or under department regulations or when the driver is in violation of department regulations or the vehicle or combination is otherwise in an unsafe condition or in violation of department regulations.

75 Pa.C.S.A. § 4107(b)(2).

testimony, 2/25/20 at 4-5, 11. Officer McGowan observed that Appellant's "front driver's window was covered with an illegal aftermarket window tint." *Id.* at 5, 12. At this point, Officer McGowan activated his lights and sirens to conduct a traffic stop, but Appellant did not immediately pull over to the side of the road. *Id.* at 5-6. After pulling over, Officer McGowan observed that Appellant was physically shaking and nervous and exhibited labored breathing. *Id.* at 8. Officer McGowan testified that a subsequent test of the window tint revealed that it registered 17% light transmission, which is well below the 70% allowed by law. *Id.* at 15. Based on the foregoing, we conclude the suppression court properly determined that Officer McGowan possessed the requisite probable cause to stop Appellant's vehicle for a violation of Section 4107(b)(2).

Appellant next argues that his suppression motion should have been granted because the duration of the traffic stop was improper and Officer McGowan's inquiry as to his probation status unnecessarily prolonged the stop. Appellant's brief at 43-52. We disagree.

The United States Supreme Court has long recognized that "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). In *Commonwealth v. Ellis*, 662 A.2d 1043 (Pa. 1995), our Supreme Court held that an additional ten to

- 11 -

fifteen minutes of detention did not constitute an impermissible extension of a traffic stop. *Id.* at 1049.

Here, the record reflects that the initial traffic stop in question was considerably less than fifteen minutes in length. Officer McGowan testified at the suppression hearing that although he didn't "feel comfortable putting a time limit on [the traffic stop]," he did not "feel like it was very long" and certainly not greater than fifteen minutes. Notes of testimony, 2/25/20 at 10. Moreover, Officer McGowan's inquiry of Appellant with respect to his probation status consisted of a single question, which clearly did not impermissibly extend the traffic stop. *See id.* at 8; *Ellis*, 662 A.2d at 1049. Accordingly, we find that Appellant's claim must fail.

Appellant next argues that the evidence seized as a result of the traffic stop should have been suppressed because PO Kinsinger and Cutter "act[ed] like stalking horses for the police[.]" Appellant's brief at 53-66.

As discussed more fully *infra*, the record reflects that POs Kinsinger and Cutter did not act as police officers in this matter but were merely carrying out their respective duties as probation officers after being informed by Officer McGowan that Appellant had lied about his probation status. *See* notes of testimony, 2/25/20 at 8-9. It is well settled in this Commonwealth that "[a] probation officer does not act as a stalking horse if he initiates the search in the performance of his duties as a probation officer." *Commonwealth v. Parker*, 152 A.3d 309, 321 n.6 (Pa.Super. 2016) (citation omitted); *see also*

*Commonwealth v. Altadonna*, 817 A.2d 1145, 1152–1153 (Pa.Super. 2003).

The crux of Appellant's remaining suppression claims is that his continued interaction with POs Cutter and Kinsinger transitioned the traffic stop into an unlawful investigative detention. Appellant's brief at 33-42, 67-71. In support of this contention, Appellant avers that POs Cutter and Kinsinger lacked reasonable suspicion to seize him; their protective search exceeded of the scope of *Terry*[4]; and that they violated the plain feel doctrine. *Id.*

Preliminarily, we recognize that in *Rodriguez v. United States*, 575 U.S. 348 (2015), the United States Supreme Court examined the permissible scope of an officer's investigation during a traffic stop. The *Rodriguez* Court reasoned:

> A seizure for a traffic violation justifies a police investigation of that violation. A relatively brief encounter, a routine traffic stop is more analogous to a so-called *Terry* stop ... than to a formal arrest. Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission — to address the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate th[at] purpose. Authority for the seizure thus ends when tasks tied to the traffic infraction are — or reasonably should have been — completed.

---

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

*Rodriguez*, 575 U.S. at 354 (citations and internal quotation marks omitted).

Because Appellant's claims challenge the ability of POs Kinsinger and Cutter to conduct a search of his vehicle and person, we observe the following. "[P]robationers and parolees have limited Fourth Amendment rights because of a diminished expectation of privacy." *Parker*, 152 A.3d at 316 (citation omitted).

> [POs] need not have probable cause to search a [probationer] or his property; instead, reasonable suspicion is sufficient to authorize a search.
>
> A search will be deemed reasonable if the totality of the evidence demonstrates: (1) that the [PO] had a reasonable suspicion that the [probationer] had committed a [probation] violation, and (2) that the search was reasonably related to the [PO's] duty.

*Commonwealth v. Wright*, 255 A.3d 542, 549–550 (Pa.Super. 2021) (citations and internal quotation marks omitted), *appeal denied*, 268 A.3d 374 (Pa. 2021).

Pursuant to 42 Pa.C.S.A. § 9912(a)(1)(i), "[a] personal search of an offender may be conducted by [a PO] . . . if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision[.]" *Id.* Subsection 9912(d)(6) sets forth the following factors the court may consider in determining whether reasonable suspicion exists:

(i)    The observations of officers.

(ii)   Information provided by others.

(iii)   The activities of the offender.

(iv)   Information provided by the offender.

(v)    The experience of the officers with the offender.

(vi)   The experience of officers in similar circumstances.

(vii)  The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

42 Pa.C.S.A. § 9912(d)(6).

In **Parker**, a panel of this Court observed that,

[i]n establishing reasonable suspicion, the fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a person of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

The threshold question in cases such as this is whether the probation officer had a reasonable suspicion of criminal activity or a violation of probation prior to the search.

**Parker**, 152 A.3d at 318 (citations, brackets, and internal quotation marks omitted).

Here, our review of the record supports the suppression court's conclusion that Appellant was not subjected to an unlawful investigative

detention when POs Kinsinger and Cutter interacted with Appellant after Officer McGowan returned to the vehicle and informed Appellant that he planned to issue him a warning and that he would be free to leave. Viewing the totality of the circumstances, we conclude that POs Kinsinger and Cutter possessed the requisite reasonable suspicion to justify a second investigatory detention to search Appellant's vehicle and person.

Specifically, the suppression court opined as follows:

> In the instant case, [POs] Kinsinger and Cutter knew [Appellant] was on probation at the time of the traffic stop. [Notes of testimony, 2/25/20 at 27.] Officer McGowan informed them that [Appellant] stated he was not on probation. [*Id.*] At this point, [POs] Kinsinger and Cutter know that [Appellant] is lying about his probation status. They also know that [Appellant] has been pulled over for a traffic stop due to illegal window tint. Using this information, [POs] Kinsinger and Cutter decide that they have reasonable suspicion to search [Appellant] and his property. [*Id.* at 30-31.] Thus, the probation officers had the requisite reasonable suspicion to search [Appellant's] vehicle and his person. We find [Appellant's] arguments are without merit.

Suppression court opinion, 2/10/21 at 5 (citation formatting corrected).

Following our careful review, we agree with the suppression court's assessment and adopt these well-reasoned conclusions as our own.

## II. Motion to Recuse

Appellant next argues that Judge Deborah E. Curcillo was biased against him and erred by denying his motion that she recuse herself. Appellant's brief at 71. Appellant's claim is premised on his belief that Judge Curcillo "denied

[his] right to a full suppression hearing and continuously allowed the Commonwealth to make untimely filings pertaining to the suppression matter and wholly adopted the Commonwealth's findings of fact and legal conclusions." *Id.* This claim is meritless.

> Our standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential. We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially.

*Commonwealth v. Harris*, 979 A.2d 387, 391–392 (Pa.Super. 2009) (citations and internal quotation marks omitted).

"It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Commonwealth v. White*, 910 A.2d 648, 657 (Pa. 2006) (citation omitted).

Here, our independent review of the multiple transcripts in this matter does not reveal a scintilla of evidence to support Appellant's contention that Judge Curcillo "displayed a deep-seated favoritism to the Commonwealth, which made a fair judgment impossible." Appellant's brief at 74. Nor does the record support Appellant's contention that he was denied his right to a full suppression hearing. The record reveals that trial court conducted a full hearing on February 25, 2020 and only denied Appellant's suppression motion following its comprehensive review of the evidence presented in both parties'

briefs and at the hearing itself. Accordingly, Appellant's claim that the trial court erred in denying his recusal motion must fail.

## III. Sufficiency of the Evidence

Appellant next argues that there was insufficient evidence to sustain his convictions for possession of a controlled substance and PWID. Appellant's brief at 77.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), *appeal denied*, 4 A.3d 1054 (Pa. 2010).

To sustain a conviction for the crime of possession of a controlled substance, the Commonwealth must prove that appellant "knowingly or intentionally possess[ed] a controlled or counterfeit substance" without being properly registered to do so under the act. 35 P.S. § 780–113(a)(16). The crime of PWID requires the Commonwealth to prove an additional element: that Appellant possessed the controlled substance with the intent to manufacture, distribute, or deliver it. 35 P.S. § 780–113(a)(30).

- 18 -

Here, the crux of Appellant's claim is that the Commonwealth failed to prove that he possessed crack cocaine, because "the only scientific proof presented from the laboratory was a report that identified the substance as cocaine, not cocaine base." Appellant's brief at 77. Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we find that this claim is entirely devoid of merit.

The record establishes that during the traffic stop, Appellant was found in possession of 6 clear plastic baggies containing approximately 26 grams of powder and crack cocaine, as well as $12,000 in cash. Notes of testimony, 3/10/21 at 38. Officer McGowan testified that he identified the crack cocaine and powder cocaine by observing the differences in the physical consistencies of each substance. *Id.* at 42-44.

At trial, the Commonwealth presented the testimony of Dauphin County Detective John Goshert, who testified as an expert in the field of street level drug tracking. *Id.* at 170. Detective Goshert testified at great length about the differences between the powder cocaine and crack cocaine, which is also known as cocaine base, that was found in the six baggies recovered from Appellant. *Id.* at 173-176.

The record further reflects that Amber Gegg, an expert in the field of drug analysis with the Pennsylvania State Police Laboratory, testified that the white substances recovered from Appellant tested positive for cocaine. *Id.* at 105-106, 114-117. The evidence presented at trial also established that the

Pennsylvania State Police Laboratory does not differentiate between crack cocaine and powder cocaine on its reports. *Id.* at 192.

Based on the foregoing, we find that the Commonwealth presented sufficient evidence for the jury to conclude that Appellant knowingly or intentionally possessed crack cocaine with the intent to distribute it. Accordingly, Appellant's sufficiency claim must fail.

## III. Weight of the Evidence

In his final claim, Appellant argues that the verdict was against the weight of the evidence because "the Commonwealth failed to present scientific evidence in the form of a laboratory report that confirmed that the substance that was tested was cocaine base." Appellant's brief at 78. We disagree.

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Galvin*, 985 A.2d 783, 793 (Pa. 2009) (citation omitted), *cert. denied*, 559 U.S. 1051 (2010). "[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Miller*, 172 A.3d 632, 643 (Pa.Super. 2017) (citation omitted), *appeal denied*, 183 A.3d 970 (Pa. 2018).

> [W]here the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Shaffer*, 40 A.3d 1250, 1253 (Pa.Super. 2012) (citation omitted).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations and emphasis omitted).

Upon review, we find that the trial court properly exercised its discretion in concluding that the jury's verdict was not against the weight of the evidence. *See* trial court opinion, 11/1/21 at 10-11. "[T]he trier of fact while

passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Commonwealth v. Andrulewicz**, 911 A.2d 162, 165 (Pa.Super. 2006) (citation omitted), **appeal denied**, 926 A.2d 972 (Pa. 2007).

Here, the jury clearly found the testimony of the three primary Commonwealth witnesses on this issue – Officer McGowan, Ms. Gegg, and Detective Goshert – credible, and elected not to believe Appellant's version of the events. Appellant essentially asks us to reassess their credibility. We are precluded from reweighing the evidence and substituting our judgment for that of the fact-finder. **Clay**, 64 A.3d at 1055. Accordingly, Appellant's weight claim must fail.

For all the foregoing reasons, we affirm the trial court's August 25, 2021 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/16/2022

- 22 -